IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY CATRON, CHARLES R. HARGIS,
MICHAEL LILE, FERDINAND LUPPERGER,
JO ANNE REYNOLDS, WILLIAM SHUMATE,
On behalf of themselves and all others similarly
situated

        Plaintiffs,

vs.

                                        Case No. 8:09-CV-00923-EAK-EAJ

CITY OF ST. PETERSBURG

        Defendant.

_____/

## DEFENDANT, CITY OF ST. PETERSBURG'S DISPOSITIVE MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

    The Defendant, City of St. Petersburg ("City"), moves for an order dismissing the complaint herein under Fed.R.Civ.P. 12(b)(2) and (6) for failure to state a claim upon which relief can be granted or, in the alternative, Defendant City moves for summary judgment pursuant to Rule 56, Fed.Civ.P., and as grounds for these motions, Defendant City states as follows:

## MOTION TO DISMISS

    Plaintiffs have made various conclusory constitutional arguments.  The court should not assume that the Plaintiffs can prove facts that were not alleged.  Conclusory allegations are not accepted as true.  Bryan Media v. City of St. Petersburg, 2005 U.S. Dist. LEXIS 45837, *4 (M.D. Fla. 2005) (citing to Gersten v. Rundle, 833 F. Supp. 906, 910 (S.D. Fla. 1983).  It was held in Bryan Media that allegations regarding enforcement of an ordinance were not sufficient even under a notice pleading requirement of Rule 8.  Id.  The Plaintiffs had made no factual allegations of the Defendant's bad faith other than conclusory allegations.  Similarly, to assert as Plaintiffs do throughout the Complaint that the City of St Petersburg acted in an unlawful manner is

deficient and fails to provide notice as to what the City of St. Petersburg is to respond to. As the Eleventh Circuit stated:

> To require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the Plaintiff has stated any claims upon which relief can be granted. . . .

Fikes v. City of Daphne, 79 F.3d 1079, 1082 (11th Cir. 1996).

Material facts are not in dispute.

A.    Defendant City moves to dismiss Count I asserting Section 8-321 is facially unconstitutional in violation of the Due Process Clause.

1.    City Code Section 8-321 provides that private property may not be stored or abandoned on a public right-of-way or a public park. After notice any property stored or abandoned on public property will be removed by the City and stored for 30 days. The owner of the property is provided a pre-deprivation notice in one of two ways. If the property is placed upon a right-of-way, 36-hour notice is provided instructing the owner to move the property or the City will store it. If the owner enters a City park, he is provided notice by a sign that any abandoned property is subject to immediate removal. See § 8-321; Affidavit of Cliff Footlick, (Ex.1, ¶ 3); Affidavit of Gary Bush, (Ex. 2, ¶ 9); also Affidavit of Gary Bush, (Ex. 2, Photograph B).

2.    The Due Process Clause of the Fourteenth Amendment requires that some type of opportunity to be heard is required at some point before a state deprives with finality a person of his property interest. Barcena v. Dept. of Off-Street Parking of the City of Miami, 492 F. Supp. 2d 1343, 1348 (S.D. Fla. 2007) (citing to Parratt v. Taylor, 451 U.S. 527, 540-41 (1981). The court in Parratt rejected the proposition that a hearing was always required before an initial deprivation. Parratt at 540.

3.      The City of St. Petersburg provides both a meaningful pre- and post-deprivation notice and opportunity to be heard.  Initial loss of the property requires that the written 36-hour notice provided be ignored, or in the case of City parks, that the owner of the property ignores the posted signs.  Such written notice satisfies the Due Process requirements.  See, U.S. v. Desenak, 27 F. Supp. 2d 1300, 1305 (M.D. Fla. 1998), finding that written notice satisfied due process by reasonably calculating to apprise interested parties.

4.      If the owner of the property chooses to ignore the pre-deprivation notice, the owner is not permanently deprived of the property at that point.  The City will securely store the abandoned or stored property for 30 days.  At any point during those 30 days, the owner has complete and total opportunity to reclaim his property.  Affidavit of Cliff Footlick (Ex.1, ¶ 14). This complete post-deprivation remedy more than satisfies the Due Process requirements of the Fourteenth Amendment.  Since there is a post-deprivation opportunity to be heard and rectify any "wrongs", no actionable claim under § 1983 has been stated.  See Rittenhouse v. Dekalb County, 764 F.2d 1451, 1459 (11th Cir. 1985).  ("Consequently, appellant was not deprived of her rights without due process of law.  As a result, she has not stated an actionable claim under § 1983 . . . .")

5.      The City has a recognized legitimate interest in enacting ordinances to promote sanitation, public health, safety and aesthetics of its public property.  Joel v. City of Orlando, 323 F.3d 1353, 1358 (11th Cir. 2000).  In Joel, the Eleventh Circuit, in granting summary judgment on behalf of the city of Orlando, found that there is no right to sleep outdoors.  Id. at 1357.  As such, the court upheld an ordinance prohibiting "camping" on public property.  This included sleeping as well as the seizure of any attendant evidence of camping.  Id. at 1356.  If it can be fairly said that a municipality may prohibit the sleeping or camping on public grounds, then certainly the prohibition against the storage of property is also constitutional.

6.      The United States Supreme Court has stated that the City has a "substantial interest in maintaining the parks . . .".  Clark v Community for Creative Non-Violence, 468 U.S. 288, 296 (U.S. 1984).  Furthermore, the Eleventh Circuit has determined that municipalities have a duty to keep their streets open and clear for the movement of people and property.  One World One Family Now v. City of Miami Beach, 175 F.3d 1282 (11th Cir. 1999).  The court noted that the primary purpose of the streets is to keep them open for such movement.  Id. at 1287.  The court also recognized the city's further interest in creating an aesthetic ambiance, calling the tourists and resultant economic benefit a "substantial government interest."  Id. at 1288.

7.      The City of St. Petersburg has expressed such purpose and interest in the enactment of Ordinance 8-321.   These substantial interests are noted in the Affidavit of Cliff Footlick (Ex. 1, Photograph A, attached thereto), and the Affidavit of Gary Bush (Ex. 2, Photograph B, attached thereto).

8.      Homelessness is not a suspect class.  Joel at 1357.  Under rational basis analysis, there exists a rational basis for believing that prohibiting the storing or abandonment of personal property in the right-of-way or City parks furthers the legitimate governmental goals previously enunciated.  See Clark, 468 U.S. at 296-298, which the prohibition against, among other things, storing personal property on park lands was a reasonable means of achieving that goal.

9.      There is no constitutional right to store one's belongings on public lands.  Church v. City of Huntsville, 30 F.3d 1332 at 1345 (11th Cir. 1994).

10.      The City of St. Petersburg does not have a policy or practice of targeting, seizing or destroying the property of the homeless.  Affidavit of Cliff Footlick (Ex. 1); Affidavit of Gary Bush (Ex. 2), and Affidavit of Sharon Carron (Ex. 3).  In fact, the city goes to great lengths to provide services for the homeless, including storage of their property.  Affidavit of Cliff Footlick (Ex.1); Affidavit of Rhonda Abbott, (Ex. 4).  Absent such a policy, whether such an ordinance has a disparate effect on the homeless is of no constitutional concern.  Joel at 1359.

11.    The City of St Petersburg has partnered with St. Vincent de Paul, a provider of homeless services, to provide secure storage facilities for those individuals in need of a place to store personal items.  There are approximately 200 storage bins monitored by a security guard. Affidavit of Rhonda Abbott (Ex. 4, ¶ 12).

12.    As the court noted in <u>Love v. City of Chicago</u>, 1996 U.S. Dist. Lexis 15277, *15 (N.D. Ill. 1996):

> The City does not have an obligation to ensure the safety of property that people voluntarily leave on the city's property. . . .
>
> The City is not an insurer for the property of people who choose to live on City property rent-free. . . .

The court held that an ordinance allowing for the removal of such property left on public lands did not violate the Fourteenth Amendment. <u>Id</u>. at 17.

13.    Plaintiffs assert that City Code § 8-321 is void for vagueness; however, the code section is not "substantially incomprehensible" as required by the court in <u>Exxon Corp. v. Busbee</u>, 644 F.2d 1030, 1033 (5th Cir. 1981) since the complainant must show that there is no standard of conduct specified at all.  <u>Village of Hoffman Estates, et al. v. The Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 495 (1981).  Such is not the case here where specific prohibited items are enumerated and definitions of some terms which are crucial to the meaning of the ordinance are included.

14.    Plaintiffs fail to assert any allegations that City Code § 8-321 has no possibility of a valid application.  A facial challenge, as here, to vagueness would mean that the ordinance would have to be invalid in total, without any possibility of a valid application.  <u>Steffel v. Thompson</u>, 415 U.S. 452, 474 (1974).

15.    The court in <u>Joel</u> rejected a similar vagueness attack on the ordinance precluding sleeping on public property.  <u>Joel</u> at 1360.  The ordinance was found to be one that is sufficiently

specific that a person of ordinary intelligence could reasonably understand what conduct is prohibited. Id.

16.    The Plaintiffs lack standing to assert a facial challenge to § 8-321.  None of the named Plaintiffs have asserted that they are unaware of what activity § 8-321 seeks to prevent. Only Plaintiff Shumate states that he in fact had abandoned property taken.  Plaintiff Shumate has failed to state what items were taken, by whom, from where, and under what circumstances. To have standing to maintain a suit in federal court the litigant must clearly state and specify the facts sufficient to satisfy the Article III standing requirements.  United Brothers of the Bay Area v. Sander Freedman, 742 F. Supp. 1133 (M.D. Fla. 1990).

B.    Plaintiffs claim in Count 2 that § 8-321 is unconstitutional as applied in violation of the Due Process Clause.

1.    The Plaintiffs lack standing to assert an as applied constitutionality challenge on § 8-321.  See Defendant's Motion, ¶ 14.

2.    Even if standing were to exist, the City reasserts its arguments from ¶¶ A, 1–15. The ordinance provides meaningful pre- and post-deprivation notice and remedy.  Furthermore, the ordinance is designed to further valid government interests.  It does so clearly and plainly in a manner with which a person of ordinary intelligence is aware what is being regulated.

3.    To sustain the claim that any loss of property was unconstitutional there must be evidence beyond the mere negligence of one isolated incident (to that extent even that is proven). Stone v. Agnos, 960 F.2d 893, 895 (9th Cir. 1992).  To the contrary, the policy is for any abandoned or unlawfully stored property to be returned upon request within 30 days.  Affidavit of Cliff Footlick (Ex. 1, ¶ 14).

4.    Plaintiffs have failed to state a cause of action under § 1983 that § 8-321 is unconstitutional.

C.    Plaintiff's Assert in Count 3 that City Code §§ 20-30 is facially unconstitutional in violation of the First Amendment.

1.      Plaintiffs allege that the City Code § 20-30 is unconstitutional due to its infringement upon Plaintiffs' First Amendment rights.  § 20-30 provides that City employees are authorized to issue trespass warning to any individual who violates an ordinance, rule or law while on a City-owned facility, including a park.

2.      Plaintiffs lack standing to assert a violation of their First Amendment rights. Plaintiffs have failed to assert that they have been deprived by the City of St. Petersburg of any opportunity for speech or expression.  The Plaintiffs assert conclusory allegations; the First Amendment violations are either hypothetical or imaginary.  Absent a redressable injury, a judicial determination of a Plaintiff's claim would amount to an advisory opinion prohibited by Article III.  Valley-Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 471-72 (1982).  Standing requirements are not mere pleading requirements but rather an indispensable part of the Plaintiffs' case.  Each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation.  When standing is raised in a motion to dismiss, the issue is properly resolved by reference to the allegations of the Complaint.  Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136-7 (1992).

3.      Normally, a Plaintiff has standing to attack a statute "as applied" to the Plaintiff. Nelson v. Hillsborough County, 1993 U.S. Dist. LEXIS 21497, *9 (M.D. Fla. 1993) (citing to Naturist Society, Inc. v. Fillyau, 958 F.2d 1515, 1521 (11th Cir. 1992).  First Amendment facial challenges have been permitted where regulations delegate merely broad licensing discretion to an administrative office.  Id.  That is not the cause of action asserted by the Plaintiffs and thus they lack standing to assert a facial challenge.

4.      In the present case, Plaintiffs only assert a hypothetical desire to conduct a generalized activity at some future time.  See, e.g., Plaintiffs' Complaint, ¶ 64, where Mr. Hargis,

.

after being trespassed from Williams Park, states that he "likes to visit" the monuments in the parks. There is no specificity or particularity of standing indicated.

5.    Assuming the parties have standing the Trespass Warning § 20-30 is a content neutral, narrowly tailored ordinance, serving a necessary and compelling interest of the City of St. Petersburg, while leaving open ample alternative forums.

6.    The City recognizes that the parks which § 20-30 concerns, including Williams Park referenced in the Complaint, are public forums.  However, as the Eleventh Circuit has stated, even in a public forum the government may enforce regulations which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.  Smith v. City of Ft. Lauderdale, 177 F.3d 954, 956 (11th Cir. 1999).

7.    In Smith, the court held that restrictions on begging in the Ft. Lauderdale Beach area are narrowly tailored to serve the City's interest in providing a safe, pleasant environment and eliminating nuisance activity on the beach.  Id.  Banning the begging, which is a First Amendment activity, from the public forum was found not to burden substantially more speech than was necessary to further the government's legitimate interest.  Id.  The restrictions on one area were materially mitigated by the allowance of begging in "streets, on sidewalks, and in any other public forum throughout the City."  Id. at 957.

8.    The City has a compelling interest in maintaining the health, safety and welfare of the visitors to its parks, as well as the aesthetics of the parks themselves.  See Clark, 468 U.S. at 296; Stone v. Agnos, 960 F.2d 893, 895 (9th Cir. 1992).

9.    § 20-30 is content-neutral.  There is no evidence on its face that the general trespass provisions are enforced based upon the message one seeks to deliver.  In Adderly v. Florida, 385 U.S. 39 (1966), the U.S. Supreme Court addressed Florida's trespass statute in the context of demonstrators outside the county jail.  Court note that there was no "shred of evidence" that the trespass was issued because of what the demonstrators were saying.

> Nothing in the Constitution of the United States prevents Florida from
> even-handed enforcement of its general trespass statute against those
> refusing to obey the Sheriff's order to remove themselves from what
> amounted to the driveway of the jail house. The State, no less than a
> private owner of property, has power to preserve the property under its
> control for the use to which it is lawfully dedicated.

Id. at 47.

10.     The court went on to note that there is an assumption that people who want to protest have a constitutional right to do so wherever and whenever they please. This assumption was explicitly rejected. Id. at 47-8.

11.     The trespass after warning statute was further discussed by the Eleventh Circuit in Daniel v. City of Tampa, 38 F.3d 546 (11th Cir. 1994). The Court held that the statute was content-neutral. Id. at 550. The court directly held that the trespass after warning statute as enforced in Daniel was not overbroad. Id. at 551. The Court also noted the statute was not void for vagueness. Id.

12.     The Trespass Warning § 20-30 is narrowly tailored to serve a necessary and compelling interest. The court in Daniel noted that enforcement of the trespass after warning statute was a reasonable means of combating drug and crime problems. Id. at 551. Prohibiting entry into a public park is a valid and reasonable exercise of the police power, to further legitimate goals. See, State of Florida v. Baal, 680 So.2d 608 (Fla. 2nd DCA 1996) (Prohibition from entering St. Petersburg public park after dark valid exercise of police power).

13.     An ordinance provision similar to § 20-30 was challenged in Chad v. City of Ft. Lauderdale, 66 F. Supp. 2d 1242 (S.D. Fla. 1998). In Chad, the City enacted park regulations, to provide the citizens with a safe environment, including eliminating "nuisance activity". Any person found to be in violation of any of the rules or regulations shall be ordered to leave all parks. Furthermore, anyone refusing to leave may be arrested and prosecuted for trespassing under other existing ordinances. In holding that the ordinance was constitutional, the federal court found that the ordinance represented a reasonable time, place and manner restriction on

protected speech.  Id. at 1244.  Court further held that the ordinance was neither vague or overbroad.  Id. at 1244-45.  Significantly, the court held that this provision was narrowly tailored to promote a significant government interest that would be less effectively accomplished without it.  The City has a significant interest in promoting a safe, healthful and aesthetic environment. Id. at 1246.  These are precisely the same interests narrowly regulated in § 20-30, in the same manner.  See Affidavit of Cliff Footlick (Ex. 1, ¶ 10).

14.    Plaintiffs assert in Paragraph 270, again deficient of any facts that § 20-30 fails to establish minimum guidelines to govern enforcement.  In rejecting a similar challenge, the Florida Supreme Court noted that discretion statutorily given an "authorized person" is mandated by the nature of the problem presented.  State of Florida v. Dye, 346 So.2d 538 (Fla. 1477) (upholding Florida's trespass statute).

15.    There are a multitude of alternative forums available, should one not be permitted in a particular park.  All of the City parks are surrounded by sidewalks, which are not included in the trespass scheme.  A person wishing to exercise their First Amendment rights may do so and be heard by park patrons.  Furthermore, the Plaintiffs may exercise their rights anywhere else they may lawfully be in the City.  See, Affidavit of Sharon Carron (Ex. 3, ¶ 22).

16.    Restrictions on particular activity in a public forum are materially mitigated by the allowance of such activity . . ." on sidewalks, and in many other public for a throughout the City."  Smith, 177 F.3d at 956.  See also International Caucus of Labor Committees v. City of Montgomery, 111 F.3d 1548, 1551 (11th Cir. 1997) ("Individuals and organizations can continue to speak, distribute their literature and solicit contributions on the sidewalk."); Nelson v. Hillsborough County, 1993 U.S. Dist. LEXIS 21497 (M.D. Fla. 1993), holding that availability of city roads and sidewalks provided alternative channels of communication; Frisby v. Schultz, 487 U.S. 474, 483-84 (1988) finding that even protected speech is not equally permissible in all places at all times; protestors had alternative forums throughout the neighborhood available.

17.    The City of St. Petersburg does not have a practice, policy or custom of restricting any individuals or groups of individuals' First Amendment Rights.  See Affidavit of Sharon Carron (Ex. 3, ¶ 21).

18.    Plaintiff has failed to state a cause of action that § 20-30 is facially unconstitutional.

D.    <u>Plaintiffs assert in Count 4 that § 20-30 is unconstitutional as applied.</u>

1.    The City of St. Petersburg reasserts its arguments from ¶¶ C, 1-18.

2.    Plaintiffs failed to assert standing, beyond a vague, hypothetical desire to "wish" to engage in unspecified activity.  See Plaintiffs' Complaint, ¶ 285.

3.    Plaintiffs claim that there are feedings in Williams Park with which they would avail themselves if they were not trespassed from the Park.  The City of St. Petersburg has never restricted or limited feeding in any of the City parks.  However, there is no institutionalized feeding occurring in Williams Park.  Affidavit of Rhonda Abbott (Ex. 4, ¶ 5).

4.    There are at least nine (9) soup kitchens and/or food pantries located in and around downtown St. Petersburg providing food to the homeless.  Affidavit of Rhonda Abbott (Ex 4, ¶ 5).  In addition, there is at least one individual that provides meals to the homeless Monday through Friday near, but not on, Mirror Lake Park. Affidavit of Rhonda Abbott (Ex 4, ¶ 5)

5.    As applied, the Plaintiffs who have been trespassed from City parks are not denied access to feedings.

6.    The City of St. Petersburg has narrowly tailored regulations to serve the City's legitimate interests.  See Defendant's Motion to Dismiss, ¶¶ C, 1-18.

7.    The City has a legitimate compelling interest in providing a safe, alcohol- and drug-free park for the use of its citizens and visitors.  Enforcement of the ordinance is a reasonable means of combating drug and crime problems on the parks.  See, <u>Daniel v. City of</u>

<u>Tampa</u>, 38 F.3d 546, 550 (11th Cir. 1994) (trespass statute reasonable means of combating drugs and crime within Housing Authority property).

8.      Three named Plaintiffs assert that they have been trespassed from various City parks.  Mr. Catron was arrested in Williams Park for possession of marijuana, harboring a 15-year old runaway, and violation of his felony probation.  At that time, he was issued a trespass warning.  Affidavit of Sharon Carron (Ex. 3, ¶ 10).

9.      Mr. Hargis was arrested in Williams Park for possession of marijuana and drinking alcohol in a City park.  He was issued a trespass warning.  Affidavit of Sharon Carron (Ex. 3, ¶ 12).

10.     Mr. Lupperger was issued a trespass warning for openly drinking alcohol in Williams Park.  Affidavit of Sharon Carron (Ex. 3, ¶ 14).

11.     No individual has been issued a trespass warning due to the expression of any protected conduct or speech.  The St. Petersburg Police Department does not have a custom, policy or practice of violating a person's First Amendment rights or their right to expression.  Affidavit of Sharon Carron (Ex. 3, ¶ 21).

12.     Plaintiffs have failed to state a claim that § 20-30 is applied unconstitutionally in violation of the First Amendment.

E.      <u>Plaintiffs assert in Count 5 that § 20-30 is facially unconstitutional in violation of the Due Process Clause.</u>

1.      Plaintiffs assert both a vagueness argument, which is assumed to be a substantive due process argument, as well as a procedural due process argument.  Again, Plaintiffs fail to assert which facts, if any, support their position.  See <u>Fiske</u>, 79 F.3d at 1082.

2.      Plaintiffs lack standing to assert a facial Due Process challenge to § 20-30.

3.      The Eleventh Circuit found that Florida's trespass after warning statute was not void for vagueness.  The statute provides citizens with clear notice of what is prohibited.  <u>Daniel</u>, 38 F.3d at 550.

4.      In <u>Baal</u>, Florida's Second District Court of Appeals rejected a void for vagueness attack of the trespass ordinance of the City of St. Petersburg.  <u>Baal</u>, 680 So.2d at 608.  The trespass ordinance was found to pass constitutional muster under the vagueness doctrine because it provided sufficient notice in commonly understood language that they are prohibited from entering a park. <u>Id</u>. at 610.

5.      The court in <u>Sacco v. Las Vegas</u>, 2007 U.S. Dist. LEXIS 62397 (D. Nev. 2007), analyzing a very similar ordinance, found that trespassing individuals who commit crimes on public property from returning to that public property is constitutional. The court held that the ordinance was not vague nor did it violate procedural due process. <u>Id</u>.

6.      To prevail on a procedural due process claim, Plaintiffs must first assert what liberty or property interest was deprived without process.  Plaintiffs failed to assert just what that interest is.  The City has a compelling interest in its parks in both the health, safety and welfare of its visitors, but as well in its aesthetics.  See, <u>One World One Family Now v. City of Miami Beach</u>, 990 F. Supp. 1437, 1442 (S.D. Fla. 1997).

7.      Plaintiffs would be entitled to all judicial protections in regards to any unlawful charge of trespass after warning should any individual be inappropriately charged with trespassing in the park.  This would include declaratory relief as to the warning and relief through the criminal justice system if there is an arrest.

8.      The City parks contain signs describing the behavior which is not allowed. Furthermore, each individual is provided with written notice of the trespass warning, provided by mail or hand-delivery.  See § 20-30(d).  See <u>Brown v. Dayton Metro Housing Authority</u>, 1993 U.S. Dist. LEXIS 21297 (S.D. Ohio 1993) (adequate notice given when provided trespass warning.  Further, procedural due process satisfied by access to state courts).

9.      To prevail on a procedural due process claim, Plaintiffs must be able to point to a deprivation of some property or liberty interest.  Plaintiffs have not shown any fundamental

interest in being in the park. Further, that interest is outweighed by the City's compelling interest in keeping the parks crime-, drug- and alcohol-free. See Thompson v. Ashe, 250 F.3d 399 (6th Cir. 2001). In Thompson, Plaintiff was placed on a "no-trespass list" upon "reliable information" that an individual was involved in drug or criminal activities. Id. at 403. Banned individuals were notified by letter or personally. No procedure existed to be removed from the no-trespass list. Id. at 404. The Sixth Circuit Court of Appeals rejected the Plaintiffs' Procedural Due Process claim, finding no claimed interest outweighed the government interest in providing a safe place to live. Id. at 407-8.

10.     The City of St. Petersburg does not have a practice, policy or custom to "target" the homeless with trespass warnings. Trespass warning for parks are provided to maintain a safe and healthy atmosphere for all citizens and visitors by warning those who violate the law that they will be barred from the park for a specified period of time. See Affidavit of Sharon Carron, (Ex. 3, ¶¶ 8-9).

11.     Plaintiffs have failed to state a claim that § 20-30 is facially unconstitutional in violation of the Due Process Clause.

F.     Plaintiffs assert in Count 6 that § 20-30 is applied in violation of the Due Process Clause.

1.     Plaintiffs assert an as applied challenge to § 20-30 under the Due Process Clause. Plaintiffs fail to state what interest they are asserting or any facts to support such a claim. Plaintiffs fail to state what behavior they were not warned of, or what process they were denied. Plaintiffs lack standing to assert such a claim.

2.     The City of St. Petersburg realleges ¶¶ E, 1-11.

3.     The City's substantial interest in maintaining its parks has previously been discussed. See, e.g., Clark v. Community for Creative Non-Violence, 468 U.S. at 296.

4.     Also as previously noted, homeless persons are not a suspect class; as such rational basis review is appropriate. Joel, 232 F.3d at 1357-58.

5.      As applied, the Plaintiffs were trespassed from the park for possessing marijuana and alcohol in the City park.  Such criminal behavior is prohibited, with good reason, in City parks.  See Affidavit of Sharon Carron (Ex. 3, ¶¶ 10-17).

6.      At no time have any individuals, including the Plaintiffs, given a trespass warning because of a particular status but rather due to their unlawful activities.  See Affidavit of Sharon Carron (Ex. 3, ¶¶ 10-17).

7.      The City has a compelling interest in providing a safe, drug-and alcohol-free park.  Enforcement of the ordinance as applied is a reasonable means of combating crime, drugs and alcohol in the park.  See Daniel, 38 F.3d at 550.

8.      The City does not have a practice, policy or procedure to target the Plaintiffs, or anyone due to a particular status, but rather due to their unlawful activities.  See Affidavit of Sharon Carron (Ex. 3, ¶¶ 10-17).

9.      Plaintiffs have failed to state a claim that § 20-30 is applied unconstitutionally in violation of the Due Process Clause.

G.      <u>Plaintiffs allege in Count 7 that § 20-82 is facially unconstitutional in violation of the Due Process Clause.</u>

1.      Plaintiffs allege prohibiting sleeping, lying or reclining on the right-of-ways in the downtown St. Petersburg area during daylight hours is facially unconstitutional in violation of the Due Process Clause.

2.      Plaintiffs lack standing to assert a facial challenge to § 20-82.

3.      At the outset, it must be noted that there is always a place for the homeless, or anyone else, to sleep, lie or recline legally in St. Petersburg.  Shelter space is provided either at Pinellas Hope, a centrally located temporary housing facility, ten (10) emergency shelters, fourteen (14) transitional housing facilities or at least thirty-one (31) permanent housing facilities in the City of St Petersburg or the County.  See Affidavit of Rhonda Abbott (Ex. 4, ¶¶ 8, 17-19).

4.      Although sleeping, lying and reclining are prohibited during daylight hours in a specified area of downtown, no one is prohibited from sleeping, lying or reclining in public parks during daylight hours. See Affidavit of Rhonda Abbott (Ex. 4, ¶ 15).

5.      The Eleventh Circuit has already decided that a prohibition on camping out of doors which included sleeping out of doors or on a sidewalk is constitutional. Joel, 232 F.3d 1353. There is no fundamental right to sleep outdoors. Id. at 1357. The fact that the ordinance has a disproportionate effect on the homeless does not establish a constitutional violation. Id. at 1359. In Joel, evidence was introduced that 98 percent of those arrested were homeless. Id.

6.      The court in Joel rejected the Fourteenth Amendment and void for vagueness attacks. Id. at 1359-61.

7.      The City of St Petersburg has a duty to keep the sidewalks open and available for movement of people and property, the primary purpose to which sidewalks are dedicated. One World One Family Now, 990 F. Supp. at 1442. Further, the Supreme Court and Eleventh Circuit have recognized that aesthetics is a substantial governmental goal which is to be accorded weight. Id.

8.      The act of sleeping in a public place is not constitutionally protected conduct. Whiting v. Town of Westerly, 942 F.2d 18, 21 (1st cir. 1991) (upholding ban in sleeping outdoors in public).

9.      Similar reasonable restrictions on sleeping, lying or reclining on a sidewalk have been upheld as constitutional. See Roulette v. City of Seattle, 850 F. Supp. 1442 (W.D. Wash. 1994), rejecting a procedural and due process claim, right to travel, a First Amendment claim and denial of equal protection in ruling that a ban on sitting or lying on public sidewalks in commercial areas during certain hours was reasonable to eliminate public safety hazards created by such individuals, as well as to protect the economic vitality of the commercial areas. See also, Tobe v. City of Santa Ana, 892 P.2d 1145 (Cal. 1995) (upholding constitutionality of ordinance

banning to "camp", or store personal property in designated public areas); <u>Joyce v. City and County of San Francisco</u>, 846 F. Supp. 843 (N.D. Cal. 1994), refusing to enjoin the obstruction of sidewalk ordinance under a broad array of constitutional attacks.

10.     The City of St Petersburg has an interest in maintaining the health, safety and welfare of its citizens and visitors and in keeping the sidewalks clear and free from obstructions. It is unsafe to sleep, lay or recline on the sidewalk during busy daylight hours in downtown, both to pedestrians walking on the sidewalk and individuals reclining on the sidewalk.  The City also has an interest in the aesthetics and economic vitality of downtown.  See Affidavit of Rhonda Abbott (Ex. 4, ¶ 14).

11.     The City of St Petersburg does not have a policy, custom or practice of harassing the homeless, depriving their fundamental rights or attempting to regulate a class of individuals as opposed to individual activities.  See Affidavit of Rhonda Abbott (Ex. 4, ¶ 20).

12.     Plaintiff has failed to state a cause of action that § 20-82 is facially unconstitutional.

H.    <u>Plaintiffs assert in Count 8 that § 20-82 is unconstitutional as applied.</u>

1.     City of St Petersburg realleges the arguments of ¶¶ G, 1-12.

2.     The Plaintiffs do not have standing to assert an as applied challenge to § 20-82. Plaintiffs make conclusory constitutional arguments without stating which facts are applicable.

3.     As previously discussed, ordinances such as the City of St Petersburg's restriction on sleeping in the downtown sidewalks during the day have withstood constitutional scrutiny in the Eleventh Circuit and other jurisdictions.  See, <u>Joel</u>, 232 F.3d 1353; <u>Whiting</u>, 942 F.2d 18; <u>Roulette</u>, 850 F. Supp. 1442; <u>Tobe</u>, 892 P.2d 1145; <u>Joyce</u>, 846 F. Supp. 843.

4.     The only Plaintiff to attempt to assert standing is Mr. Lupperger, who states he was issued a Notice to Appear for Sleeping, Lying or Reclining under § 20-82.  The Complaint

fails to state what activity Mr. Lupperger was performing, or when or where the violation occurred.

     5.    The Plaintiffs lack standing to attack the substantive due process or vagueness of the ordinance. Because Plaintiff engaged in the specific type of conduct which the core of the ordinance was designed to prohibit, they have no standing to question the vagueness of the law. Village of Hoffman, 455 U.S. at 494-95.

I.    Plaintiffs allege an Eighth Amendment violation in Count 9.

     1.    Plaintiffs allege, in conclusory fashion, an Eighth Amendment violation, without stating which specific facts of law is being challenged.

     2.    Plaintiffs lack standing to make an Eighth Amendment challenge.

     3.    The Eighth Amendment imposes substantive limits on what can be made criminal and punished. Ingraham v. Wright, 430 U.S. 651, 667 (1977). A distinction is made between applying criminal laws to punish conduct, which is constitutional, and applying them to punish status, which is not. Joel at 1361. The Eleventh Circuit, in analyzing the restrictions on public sleeping, determined the ordinance does not criminalize involuntary behavior. Id. at 1362. The Eighth Amendment challenge was rejected. Id.

     4.    In Joyce, 846 F. Supp. at 853, the court considered the entire context of ordinances in light of an Eighth Amendment challenge brought on behalf of a class of homeless. The ordinances, known as the "Matrix Program" involved limitations on public drinking and inebriation, obstruction of sidewalks, sleeping in public parks, public urination and defecation, panhandling, and others. Id. at 846. The court held that the ordinances did not criminalize the "status" of homelessness, and thus there was no Eighth Amendment violation. Id. at 853-58. See also, Tobe, 892 P.2d at 1166, where the California Supreme Court found that the ordinance punishes proscribed conduct (camping and storing of property on public property), not the status of being homeless.

5.      The City of St Petersburg may regulate public urination and defecation.   See Clark, 468 U.S. at 298.   "[T]he Park Service may enforce regulations relating to . . . urination . . . ."  Id.  See also Joyce, 846 F. Supp. at 853.

6.      § 20-123 of the St. Petersburg Code prohibits public urination and defecation.  An exception is created in Section (c) to exclude those who lack the physical or mental ability to control their bodily functions.

7.      The City of St Petersburg has five (5) downtown restrooms available for public use.  They are open as late as 1:00 a.m. and as early as 7:00 a.m.  Affidavit of Cliff Footlick (Ex. 1, ¶ 15).  The public restrooms are closed at night as are the parks for the public health, safety and welfare.  There is no policy or procedure to close public restrooms to detrimentally affect any particular person or class of persons.  Affidavit of Cliff Footlick (Ex. 1, ¶ 16).

8.      The closing of the restrooms for limited hours at night allow for the maintenance of the restrooms, as well as to deal with the frequent vandalization.  Affidavit of Cliff Footlick (Ex. 1, ¶¶ 17-18, Photograph B).

9.      The City of St Petersburg does not have a policy of depriving the homeless of their fundamental rights.  Affidavit of Cliff Footlick (Ex. 1, ¶ 19).

10.     Plaintiff Lupperger has been arrested or cited for urinating or defecating in public eight (8) times.  On seven (7) of those occasions, public restrooms were open and available in downtown St. Petersburg.  Affidavit of Sharon Carron (Ex. 3, ¶ 18).

11.     To the extent an individual cannot control their ability to urinate or defecate, or have an available restroom, the ordinance itself creates a protective exception.  Furthermore, a necessity defense would be available for any such individual.  See e.g., Jenks v. State of Florida, 582 So.2d 676 (Fla. 1st DCA 1991), finding that the necessity defense exists at common law in Florida.

12.    Plaintiffs have failed to state a cause of action that the City of St Petersburg violates their Eighth Amendment rights.

J.    Plaintiffs assert the City of St Petersburg violates their Fourth Amendment rights in Count 10.

1.    Plaintiffs allege that the City of St Petersburg violates the Plaintiffs' Fourth Amendment rights.    Plaintiffs state conclusory allegations without any specific facts or circumstances to allow the City of St Petersburg to respond appropriately.

2.    Plaintiffs lack standing to assert a Fourth Amendment violation.    No facts are stated which prove or demonstrate a constitutional interest has been violated.

3.    The St. Petersburg Police Department does not have a policy, custom or practice of unlawfully searching or seizing the homeless or any other individual or group.    See Affidavit of Sharon Carron (Ex. 3, ¶ 6).

4.    The St. Petersburg Police Department does enforce laws designed to regulate unlawful activities, for the health, safety and welfare of all of the City's citizens and visitors.    See Affidavit of Sharon Carron (Ex. 3, ¶ 7).

K.    Plaintiffs assert in Count 11 a violation of the Equal Protection Clause.

1.    Plaintiffs assert a violation of the Equal Protection Clause by stating conclusory allegations without any specific facts or circumstances to allow the City to respond appropriately.

2.    Plaintiffs lack standing to assert an Equal Protection Clause violation.

3.    Homeless persons are not a suspect class, nor is sleeping outdoors a fundamental right.    Joel, 232 F.3d at 1357.    Under a rational basis analysis, an ordinance is entitled to a strong presumption of validity.    Id.

4.    To prove an equal protection claim, Plaintiffs must prove discriminatory intent. Id. at 1358.    Disparate effect on the homeless alone does not violate the Equal Protection Clause. Id; See also Joyce, 846 F. Supp. at 858.

5.    The Eleventh Circuit has rejected a similar Equal Protection claim in Joel, 232 F.3d at 1359.  The court found that based upon the legitimate government purposes of promoting aesthetics, sanitation, public health and safety, there existed a rational basis for the restrictions. Id., at 1358-59.

6.    A similar set of ordinances addressing public drinking, inebriation, obstruction of sidewalks, lodging, sleeping in parks, public urination and defecation, and panhandling was found not to be shown to violate Equal Protection.   Joyce, 846 F. Supp. at 859.  See, also, Davison, 924 F. Supp. 989; Whiting, 942 F. Supp. 18; Roulette, 850 F. Supp. 1442; Tobe, 892 F. 2d 1145, all rejecting similar Equal Protection Clause claims brought on behalf of homeless individuals.

7.    Plaintiffs have failed to state a claim of an Equal Protection Clause claim.

L.    Plaintiffs assert a violation of Right to Travel in Count 12.

1.    Plaintiffs assert a violation of a Right to Travel, in conclusory allegations without specifics.

2.    Plaintiffs lack standing to assert a right to travel.

3.    The Plaintiffs have failed to establish or assert a municipal policy or practice of removing the homeless, therefore, this Court need not reach the alleged impact on a right to travel.  Church, 30 F.3d at 1348 (calling the argument for a right to travel "novel").

4.    In Joyce, 846 F. Supp. 843, the court found that the combination of ordinances addressing public drinking, inebriation, obstruction of sidewalks, lodging, sleeping in parks, public urination and defecation, and panhandling did not violate a right to travel.

5.    The right to travel is typically implicated when a state creates burdens or restrictions on newer residents which do not apply to all residents.  Tobe, 892 P. 2d at 1162.  The right to travel is not violated due to an incidental impact on travel, due to a law having a purpose other than a restriction on a right to travel.  Id. at 1163.

It is a non-discriminating ordinance which forbids the use of the public streets, parks and property by residents and non-residents alike for purposes other than those for which the property was designed.  It is not constitutionally invalid because it may have an incidental impact on the right of some persons to interstate or intrastate travel.

Id. at 1164 (denying homeless plaintiffs claim under a right to travel).

6.    The City of St Petersburg has no constitutional obligation to make accommodations on or in public property available to the transient homeless to facilitate their exercise of the right to travel.  Id. at 1165 (citing to Lindsey v. Normet, 405 U.S. 56, 74 (1972)).

7.    The City of St Petersburg's actions do not impede the Plaintiffs' right to travel because they do not seek to travel anywhere, they seek to remain.  Davison, 924 F. Supp. at 994.

8.    The Plaintiffs have failed to state a claim that the right to travel was violated.

M.    Plaintiffs allege in Count 13 their right to travel under the Florida Constitution was violated.

1.    Plaintiffs allege that their state rights to intrastate travel, in conclusory allegations.

2.    The City of St Petersburg realleges ¶¶ L, 1-8.

3.    The right to travel is not implicated under the Florida Constitution.  Wilkerson v. Florida Fish and Wildlife, 853 So.2d 1088, 1089 (Fla. 1st DCA 2003).

4.    Plaintiffs have failed to state a claim of a violation of an intrastate right to travel.

N.    Plaintiffs seeking injunctive and declaratory relief.

1.    To obtain injunctive relief, the Plaintiffs must establish:

a)    A substantial likelihood of success on the merits;

b)    A substantial threat of irreparable injury if the injunction were not granted;

c)    The threatened injury to the Plaintiffs outweighs the harm an injunction may cause the defendant; and

        d)       That granting the injunction would not disserve the public interest.

Church, 30 F.3d at 1342 (homeless Plaintiffs failed to show a municipal policy that could serve as a predicate for liability and § 1983, therefore, they have not shown a substantial likelihood of success).

        2.       Plaintiffs have failed to establish any of the four requirements.  Plaintiffs in particular have failed to prove a substantial likelihood of success on the merits on any of their counts.

        3.       The City of St Petersburg objects to class certification and will file a response the appropriate time.

## CONCLUSION

The Plaintiffs have accused the City of St Petersburg of having "anti-homeless" policies; of harassing, intimidating, and arresting the homeless.  These allegations are not only unsupported, they are not true.  The City of St Petersburg has provided services for hundreds if not thousands of homeless and less fortunate.  The City works to oversee funding grants to assist homeless individuals and their families.  Affidavit of Rhonda Abbott (Ex. 4, ¶ 3).

The City of St Petersburg has worked to open Pinellas Hope, to provide housing, restrooms, showers, counseling and other services to the homeless.  As of April 2009, 1,108 homeless individuals have been served through Pinellas Hope.  Affidavit of Rhonda Abbott (Ex. 4, ¶¶ 7-8).

The St. Petersburg Police Department has a Homeless Outreach Team, which coordinates with social programs to offer the homeless services.  Affidavit of Sharon Carron (Ex. 3, ¶ 5).

The City of St Petersburg partnered with St. Vincent de Paul, a provider of homeless services to provide service storage facilities for those individuals in need of a place to store items.  Affidavit of Rhonda Abbott (Ex. 4, ¶ 11).

The City of St Petersburg does not criminalize homelessness. There are no regulations on the feeding of the homeless. There is always a place where the homeless are legally allowed to be. There is no evidence, and the City does not have a practice, policy or custom of infringing on the rights of any group of individuals, including the homeless.

For reasons stated herein, the Complaint fails to state a claim upon which relief may be granted, and the record facts show that the City of St. Petersburg, is not liable under the theories alleged and are entitled to judgment in its favor as a matter of law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 15, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Alice K. Nelson, Esquire, at alice.nelson@southernlegal.org; Catherine A. Bendor, Esquire, at cbendor@nlchp.org; Kirsten Clanton, Esquire, at kirsten.clanton@southernlegal.org; Neil Harvey Chonin, Esquire, at neil.chonin@southernlegal.org; Peter Prescott Sleasman, Esquire, at psleasman@filsinc.org; and Tulin Ozdeger, Esquire, at tozdeger@nlchp.org.

JOHN C. WOLFE
CITY ATTORNEY


By:    **s/Joseph P. Patner**
JOSEPH P. PATNER
FBN: 831557
Attorney for Defendants
Assistant City Attorney
P. O. Box 2842
St. Petersburg, Florida 33731
(727) 893-7401, FAX: (727) 892-5262
Joseph.Patner@stpete.org