IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY CATRON, CHARLES R. HARGIS,
MICHAEL LILE, FERDINAND LUPPERGER,
JO ANNE REYNOLDS, WILLIAM SHUMATE,
On behalf of themselves and all others similarly
situated

        Plaintiffs,

vs.

                                          Case No. 8:09-CV-00923-EAK-EAJ

CITY OF ST. PETERSBURG

        Defendant.

_____/

## AFFIDAVIT OF SHARON D. CARRON

STATE OF FLORIDA

COUNTY OF PINELLAS

    BEFORE ME, the undersigned authority, duly authorized under the laws of the State of

Florida to administer oaths, personally appeared Sharon D. Carron, who, being first duly sworn,

deposes and says as follows:

    1.    My name is Sharon D. Carron.

    2.    I am over 18 years of age.

    3.    I am a Major with the City of St. Petersburg Police Department. I have been

employed by the City of St. Petersburg Police Department since 1984.

    4.    I have prior experience as a Sergeant of the Downtown Deployment Team and

then as a Lieutenant supervising the Downtown Deployment Team.

    5.    I assisted and implemented the Homeless Outreach Team. The Homeless

Outreach Team, which coordinates a police officer with a social services partner, works with the

homeless primarily in downtown St. Petersburg.  The purpose and goal of the Homeless Outreach Team is to offer the homeless services, and assist them in obtaining shelter.  Hundreds of homeless have been offered services by the Homeless Outreach Team.

6.    I am familiar with the St. Petersburg Police Department policy with regard to search and seizure and other Fourth Amendment rights and issues.  The St. Petersburg Police Department does not have a policy, custom or practice of unlawfully searching or seizing the homeless or any other individual or group.

7.    The St. Petersburg Police Department does not have a policy to harass or intimidate the homeless or any other individual or group.  The St. Petersburg Police Department does enforce laws designed to regulate unlawful activities for the health and safety and welfare of all of St. Petersburg citizens and visitors.

8.    The City of St. Petersburg has no laws or ordinances which criminalize or regulate the homeless as a class.  Furthermore, the St. Petersburg Police Department does not selectively enforce the laws or ordinances to affect the homeless as a class.  The City of St. Petersburg has laws and ordinances designed to promote the health, safety and welfare of its citizens and visitors by regulating unlawful activities.  Such laws are enforced equally.

9.    The St. Petersburg Police Department has the authority to issue trespass warnings for City property including parks pursuant to St. Petersburg City Code 20-29.  The homeless are not "targeted" for trespass warnings and the warnings are issued equally to regulate individual actions not to affect groups of individuals of any status.  Section 20-30, attached hereto, provides that trespass warnings may be issued to any individual who violates a law, ordinance or regulation while on the public property, including the parks.  The purpose is to provide a safe,

and healthy atmosphere for all of the citizens and visitors by warning that those who violate said laws, ordinances or regulations are barred from the park for a specified period of time.

  10. By way of example, Anthony Catron, a plaintiff in this suit, was issued a trespass warning for the City Parks on August 23, 2006.  On that date, Mr. Catron was arrested in Williams Park for possession of marijuana, harboring a 15-year old runaway, and violation of his felony probation.  At that time, he was issued a trespass warning for the City parks, based upon the aforementioned conduct in a City Park.  Subsequent to that arrest, he was found in Williams Park and arrested for trespass on July 9, 2007; arrested for a robbery in Williams Park on July 21, 2007; arrested for trespass in Williams Park on August 14, 2007; found and arrested for trespass after warning in Williams Park on January 30, 2008.  Mr. Catron was found in Williams Park on February 4, 2008, in possession of marijuana, was arrested for trespass and was issued another trespass warning.  During his arrest on this date in Williams Park, Mr. Catron threatened the officers' life and safety.  On July 29, 2008, he was arrested for trespass after warning after being found in Williams Park.

  11. At no time was Mr. Catron given a trespass warning or arrested because of his particular status, but rather due to his unlawful activities.

  12. The next named Plaintiff to assert he was issued a trespass warning for a City Park is Charles Hargis.  On May 23, 2007, Mr. Hargis was arrested in Williams Park for possession of marijuana and drinking alcohol in a City Park.  He was issued a trespass warning to stay out of City Parks because of his use of illegal drugs in the park.  On June 5, 2007, Mr. Hargis was issued a Notice to Appear for trespass warning in Williams Park.  On February 20, 2008 and February 28, 2008, Mr. Hargis was arrested for trespass after warning in Williams Park.  On April 4, 20089, Mr. Hargis was found to be in Williams Park in possession of

marijuana. Mr. Hargis was then subsequently arrested for trespass after warning on May 5, 2008 and July 24, 2008.

13.    At no time was Mr. Hargis given a trespass warning or arrested because of his particular status but rather due to his unlawful activities.

14.    Both Mr. Catron and Mr. Hargis were given trespass warning for their possession of marijuana in a City Park. The City of  St. Petersburg has an interest in keeping the parks drug-free for the health, safety and welfare of its citizens and visitors.

15.    The last named Plaintiff to assert he was issued a trespass warning for a City Park is Ferdinand Lupperger. On April 7, 2006, Mr. Lupperger was found in Williams Park openly drinking alcohol. Mr. Lupperger was issued a trespass warning for one year. The next week, on April 12, 2006, Mr. Lupperger was charged with trespass after warning for being in Williams Park. On June 12, 2008 Mr. Lupperger was found drinking alcohol in a City Park. He was charged and also issued another trespass warning for Williams Park. On January 7, 2009, Mr. Lupperger was again found in Williams Park in possession of alcohol.

16.    At no time was Mr. Lupperger given a trespass warning or arrested because of his particular status but rather due to his unlawful activities.

17.    Mr. Lupperger was given a trespass warning for the illegal possession of alcohol in a City Park. The City of  St. Petersburg has an interest in keeping the parks alcohol-free for the health, safety and welfare of its citizens and visitors.

18.    Mr. Lupperger has been arrested and cited for urinating or defecating in public eight (8) times, on August 29, 2007; June 10, 2008; June 26, 2008; July 4, 2008; July 14, 2008; February 4, 2009; February 5, 2009; and April 22, 2009. On seven (7) of those occasions, all except for June 10, 2008, public restrooms were open and available in downtown St. Petersburg.

19.    The City of St. Petersburg has an interest in preventing public urination and defecation for the health, safety and welfare of its citizens and visitors. Public urination and defecation is unsanitary and detrimental to the aesthetics of the City.

20.    At no time was Mr. Lupperger charged or cited with public urination or defecation due to his or any particular status, but rather due to his individual unlawful activities. The St. Petersburg Code 20-123 provides exceptions to the public urination/defecation prohibition for those with impairments who lack the physical or mental ability to control their bodily functions.

21.    No individual has been issued a trespass warning due to the expression of any protected conduct or speech. The St. Petersburg Police Department does not have a custom, policy or practice of violating a person's First Amendment rights or their right to expression.

22.    Surrounding Williams Park, Mirror Lake and most if not all of the City's parks are sidewalks and other right-of-ways. Any person trespassed from the respective parks have access to the alternative forums of the sidewalks or right-of-ways throughout the City to exercise their First Amendment rights. The sidewalks and right-of-ways would provide an opportunity for anyone expressing speech to be heard by the patrons of the parks. Furthermore, beyond the City parks, sidewalks and right-of-ways, individuals trespassed from the parks may exercise their First Amendment rights anywhere else they may lawfully be in the City.

FURTHER AFFIANT SAYETH NAUGHT.

Sharon D. Carron

Sharon D. Carron

STATE OF FLORIDA

COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this **8** day of June, 2009 by

Sharon D. Carron, who is _personally known_ to me or who has produced **personally Known**

# _____ as identification and who did take an oath, and who appeared before me at

the time of notarization.

(SEAL)                                NOTARY PUBLIC:

Sign : _Marilyn Rivera_

Print: _Marilyn Rivera_

State of Florida at Large

My Commission Expires: _____

Marilyn Rivera
MY COMMISSION # DD509829 EXPIRES
January 23, 2010
BONDED THRU TROY FAIN INSURANCE, INC.

**Sec. 20-30.  Trespass warnings; authorization to issue trespass warning for public property.**

(a)  The city employees or officials, or their designees, having control over a facility, building, or outdoor area, including municipal parks, are authorized to issue a trespass warning to any individual who violates any city ordinance, rule or regulation, or state law or lawful directive of a city employee or official which violation was committed while on or within a City-owned facility, building, or outdoor area, including municipal parks, (but excluding rights-of-way), for the specific property where the violation occurred.

(b)  When no other city employee or official having control over a facility, building, or outdoor area, including municipal parks, is present, a police officer is authorized to issue a trespass warning to any individual who violates any city ordinance or state law which was committed while on or within a City-owned facility, building, or outdoor area, including municipal parks, (but excluding rights-of-way), for the specific property where the violation occurred. Prior to the issuance of a trespass warning the police officer must receive the approval of the officer's immediate supervisor for the issuance of the trespass warning.

(c)  Trespass warnings shall be issued as follows:

(1)  For the first violation, the individual may be issued a trespass warning for a period not to exceed one year.

(2)  For a second or subsequent violation, the individual may be issued a trespass warning for a period not to exceed two years.

(d)  A copy of the trespass warning shall be provided by mail or hand delivery to the individual and to the City Services Administrator or other city employee or official having control over the facility, building or outdoor area.

(e)  Any person found on or within any City-owned facility, building, or outdoor area, including municipal parks, in violation of a trespass warning may be arrested for trespassing, except as otherwise provided in this section.

(f)  The city employee or official having control over a facility, building, or outdoor area, including municipal parks, may authorize an individual who has received a trespass warning to enter the property or premises to exercise his or her First Amendment rights or to conduct necessary municipal business. Such authorization must be in writing, shall specify the duration of the authorization and any conditions thereof, and shall not be unreasonably denied.

(g)  This section shall not be construed to limit the authority of any city employee or official to issue a trespass warning to any person for any lawful reason for any city property, including rights-of-way when closed to general vehicular or pedestrian use, when necessary or appropriate in the sole discretion of the city employee or official.

(Ord. No. 718-G, § 2, 3-3-05)

EXHIBIT A