**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTHONY CATRON, CHARLES
HARGIS, MICHAEL LILE,
FERDINAND LUPPERGER, JO ANNE
REYNOLDS, and WILLIAM SHUMATE,
on behalf of themselves and all others                 Case No:  8:09-CV-00923-SDM-EAJ
similarly situated,

        Plaintiffs,

v.

CITY OF ST. PETERSBURG,

        Defendant.


**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO**
**DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

       Plaintiffs, by and through the undersigned attorneys, file this response opposing

Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Motion).[1]

(Doc. 11.)  Plaintiffs respectfully ask this Court to deny Defendant's request to treat Defendant's

Fed. R. Civ. P. 12(b)(6)[2] as one for summary judgment.[3]  Alternatively, Plaintiffs request that

---

[1]     It should be noted at the outset that Defendant's motion does not conform to M.D. Loc. R. 3.01(a). Defendant does not include a concise statement of the basis for the requested relief nor a memorandum of law. Rather, the motion is divided into subsections which contain consecutively numbered paragraphs. Each subsection begins the enumeration anew.  (For clarity, Plaintiffs provide the page number, section and paragraph cite when citing to the Motion.)  Legal argument is infused into these numbered paragraphs.  This failure to conform to the local rule makes this motion difficult to follow.

[2]     Defendant states this is a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2).  (Doc. 11, at 1.) As Rule 12(b)(2) addresses lack of personal jurisdiction, and Defendant does not provide any legal arguments or factual evidence, Plaintiffs are assuming that this was a scrivener's error.  If Defendant is raising personal jurisdiction, Plaintiffs rely on jurisdictional allegations in the complaint. (Doc. 1, ¶¶ 5, 12.) *Structural Panels,*

1

this Court deny or delay ruling on Defendant's summary judgment motion pursuant to Fed. R. Civ. P. 56(f).  This Court should also deny the motion to dismiss.

## II.  Defendant's request to treat its Motion to Dismiss as a Motion for Summary Judgment should be denied

Defendant, in its attempt to avoid review of its actions, seeks at this early stage of the case to obtain summary judgment on all thirteen of Plaintiffs' claims.  Defendant's efforts should fail.  This motion is deficient in both form and content.  Summary judgment may be entered only if there are no genuine issues of material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c).  A court is required to view the evidence and resolve all factual inferences in the light most favorable to the nonmoving party.  *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990).  If factual disputes are present the motion must be denied. *Id.*  Defendant fails to meet its burden of establishing the basis for its motion and of identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## A.  Defendant makes unsupported factual allegations in its motion

The Motion contains factual statements that are unsupported by any evidence of record.[4] The following are examples:

1.      Section D, ¶ 3 states:  "[t]he City of St. Petersburg has never restricted or limited

---

*Inc. v. Texas Aluminum Indus., Inc.*, 814 F.Supp. 1058, 1064 (M.D. Fla. 1993) (pleading of sufficient facts shifts burden to defendant to challenge personal jurisdiction).

[3]      Defendant's Motion asks this Court to grant both dismissal and summary judgment without clearly delineating which factual and legal arguments support which  request.  As the legal standard for these motions are different, Plaintiffs' have attempted to sort the relevant arguments.

[4]      The Supreme Court has stated that "no deference at all" is owed to unsupported assertions by counsel.  *Jean v. Nelson*, 472 U.S. 846, 866 (1985).

feeding in any of the City parks." (Doc. 11 at 11.)  Defendant relies on the affidavit of Rhonda Abbott (Doc. 11-5, ¶ 5) in support of this statement, but her affidavit only states that "[t]here are no regular institutionalized public feeding of the homeless in Williams Park."  First, an inference could be drawn that since there are no public feeding programs that there is some restriction on feeding in Williams Park.  Second, no where does Abbott discuss whether the City has or has not restricted or limited feeding in City parks.   Thus, either the factual assertion is contradicted by this affidavit or the affidavit fails to provide an evidentiary basis for this "fact."

2.      Section G, ¶ 3 states: "... it must be noted that there is *always* a place for the homeless, or anyone else, to sleep, lie or recline legally in St. Petersburg."  (Doc. 11 at 15) (emphasis added).  Defendant again relies on Abbott.  She describes the types of shelters and other housing facilities in Pinellas County. (Doc. 11-5, ¶¶ 8, 17-19.) Abbott does not state whether this housing is sufficient, or if the number of unsheltered individuals exceed the number of shelter beds available.  Thus, again there is no evidence to support this "fact."

**B.  Defendant's affidavits should be excluded from consideration**

An affidavit submitted in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e).  Defendant's affidavits fail to meet these requirements.  (Docs. 11-2--11-5.)  All four make representations about whether the City had a particular policy, practice or custom and whether these policies are targeted at homeless individuals.  They are mere conclusions without factual support.  (Docs. 11-2, ¶¶ 9, 10, 11, 16, 19; 11-3 ¶¶ 5, 6, 12; 11-4, ¶¶ 6, 7, 19, 21; 11-5 ¶¶ 14, 20.)  These portions should be excluded from the record entirely or, alternatively, no evidentiary weight should be accorded to them.  *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135, 138 (5th Cir. 1973)

3

(affidavits containing mere conclusions have no probative value).

Sharon Carron's affidavit (Doc. 11-4) contains factual assertions about arrests, citations and trespass warnings issued to Plaintiffs Catron, Hargis, and Lupperger that are either not based on personal knowledge, would not be admissible in evidence, and/or the affiant has not affirmatively shown she is competent to testify on these matters. (*Id.*, ¶¶ 10-18, 20-21.) She does not state she was the arresting officer, the supervisor involved, reviewed documents or spoke with the officers[5] involved. No documents are attached. Her competency to testify to the details of these incidents is not established.[6] Carron also improperly draws conclusions about individual officers' motivations[7] for arresting or issuing trespass warnings to Plaintiffs throughout the affidavit. (Doc. 11-4 ¶¶ 11, 13, 16-17, 20-21.) *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (conclusory allegations without specific supporting facts have no probative value). It is impossible to determine if Carron's affidavit is based on personal knowledge or inadmissible hearsay. Carron's affidavit should be either be excluded in its entirety, or paragraphs 6-21 should be excluded. Once these paragraphs are excluded, nothing remains that is relevant to summary judgment.

## C. Defendant has not established there are no material facts in dispute

---

[5]     Speaking with other officers might also be excluded as hearsay.

[6]     For example, Carron states that during an arrest in Williams Park, Catron "threatened the officers' life and safety." (Doc. 11-4 ¶ 10.) She does not establish whether she has personal knowledge or where she obtained such information. Another example is Carron's statement that during seven of Lupperger's arrests or citations for public urination/defecation, public restrooms were open and available. (Doc. 11-4 ¶ 18.) Nowhere does she state her knowledge of the availability of public restrooms in the City nor does she state specific facts, such as the time of day, that would lead her to the conclusion that public restrooms were both open and available.

[7]     For example, Carron states "[a]t no time was Mr. Hargis given a trespass warning or arrested because of his particular status but rather due to his unlawful status." (Doc. 11-4 ¶ 13.) No factual support is provided.

4

Defendant has failed to identify the portions of the evidentiary record that demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Defendant's Motion does not provide a statement of the basis for the request for summary judgment nor does it contain a memorandum of legal authority. Instead, the legal citations embedded throughout the Motion make it impossible to determine which argument they are meant to support. Other than a brief mention of summary judgment on pages 1 and 24, Defendant does not describe the basis for its request. Plainly, the motion is deficient and does not support the requested relief.

Defendant also fails to identify specific material facts that are not in dispute, but simply states "[m]aterial facts are not in dispute." (Doc. 11 at 2.) Plaintiffs are unable to properly respond to this conclusory statement. Further, since an answer has not been filed, it is unclear whether Defendant is admitting all allegations of the complaint. That appears unlikely since Defendant disputes facts alleged in the complaint throughout the Motion.[8] Plaintiffs should not be required at this early state in the litigation to guess which facts of a 326 paragraph complaint are "undisputed" in order to respond when it failed to meet its burden. The Motion should be denied. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

## III.  Defendant's Motion for Summary Judgment should be denied, or a ruling should be continued, pursuant to Fed. R. Civ. P. 56(f)

When a party opposing a motion for summary judgment is unable to present by affidavit facts essential to justify the opposition, a court may deny the motion or may order a continuance to permit discovery. Fed. R. Civ. P. 56(f). Ruling before Plaintiffs have the opportunity to fully

---

[8]        For example, Defendant states that "[a]ll of the City parks are surrounded by sidewalks, which are *not* included in the trespass scheme." (Doc. 11, § C ¶ 15; Doc. 11-4 ¶ 22) (emphasis added). However, Plaintiffs allege that trespass warnings for public property apply "curb to curb" and people who are prohibited from entering City parks are also prohibited from using public sidewalks surrounding City parks. (Doc. 1 ¶¶ 51, 52, 66, 101, 226, 230.)

engage in discovery on the numerous factual issues raised by the Complaint would be inappropriate. *Fernandez*, 906 F.2d at 570.[9]

Plaintiffs' ability to respond to Defendant's Motion is hampered by its filing before discovery has begun. Most of the evidence needed by Plaintiffs to respond is in the possession of Defendant. *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir. 1980) (parties' comparative access to witnesses or material is particularly salient factor for trial court to consider under Rule 56(f)). For example, Carron's affidavit lists numerous factual allegations regarding arrests, citations, and trespass warnings issued to Plaintiffs. (Doc. 11-4.) Plaintiffs have neither had the opportunity to depose the officers involved nor review the relevant documents. In light of the factual inconsistencies, and other problems with the affidavits submitted by Defendant identified by Plaintiffs in this response, the Court should allow Plaintiffs this opportunity.

Defendant's summary judgment motion should be denied without prejudice or continued until Plaintiffs have had a full and fair opportunity to conduct discovery. *Wallace v. Brownell Pontiac-GMC Co.,* 703 F.2d 525, 527 (11th Cir. 1983) (a court may deny the motion or order a continuance if it finds discovery is necessary).

## IV. Defendant's Motion to Dismiss for lack of standing should be denied

Defendant challenges Plaintiffs' standing on all but one claim for relief (Counts 1-12). This challenge is not supportable. To establish Article III standing a plaintiff has to meet three requirements: (1) "injury in fact" which is an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not 'conjectural' or 'hypothetical; (2)

---

[9]     On its face, Rule 56(f) appears to require a affidavit stating the reasons an affidavit in opposition is unavailable. However, in the Eleventh Circuit, a written representation by the opposing party's lawyer may substitute for the affidavit required by Rule 56(f). *Snook v. Trust Co. of Ga. Bank of Savannah*, 859 F.2d 865, 871 (11th Cir. 1988). This response serves as Plaintiffs' counsel's written representation.

a causal connection between the injury and the conduct complained of; and (3) a 'likelihood" that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Plaintiffs meet these standing requirements as they allege that they are the object of the government actions at issue. *Jacobs v. Fla. Bar*, 50 F.3d 901, 904 (11th Cir. 1995) (standing shown by "realistic danger" of sustaining direct injury as a result of the law's enforcement). In such cases as these, there is "ordinarily little question" that the government action has caused injury and that a judgment preventing the action will redress it. *Lujan*, 504 U.S. at 561-62.

In Counts 1-2, Plaintiffs Reynolds, Hargis and Shumate allege that they have been subject to enforcement actions under City ordinance § 8-321. (Doc. 1, ¶¶ 68-78; 112-123; 134-135; 185-201.) In Counts 3-9, Plaintiffs Catron, Hargis[10], Lile, Lupperger, and Shumate allege that they have been arrested as a result of Defendant's enforcement of one or more of the laws at issue (§§ 20-30,[11] 20-82, 20-123, and Fla. Stat. 877.03). (*Id.*, ¶¶ 46-53; 59-66; 82-85; 93-99; 100-104; 128-29; 168; 227-229; 239; 241; 243.) In addition, Plaintiffs Lile, Lupperger and Shumate have all been warned by St. Petersburg Police Officers under threat of arrest that they must comply with § 20-82's prohibitions against sleeping, lying or reclining in public rights-of-way during daylight hours. (*Id.*, ¶¶ 86-88; 92, 133, 165-67.) Lile specifically alleges that he is unsure how to comply with the prohibition against "reclining" and is afraid he will be cited and/or arrested for violating this provision of the ordinance. (*Id.*, ¶¶ 87-88.) In Count 10,

---

[10]     Hargis also specifically alleges that he has standing bring a First Amendment claim for § 20-30. (Doc. 1, ¶¶ 64, 233, 275.)

[11]     Catron, Hargis and Lupperger allege injury-in-fact under § 20-30. Thus, they have standing to challenge the law on overbreadth grounds (Count 3) as they even if their particular conduct is not constitutionally protected. *Bischoff v. Osceola*, 222 F.3d 874, 883-84 (11th Cir. 2000).

Plaintiffs Catron, Hargis, Lupperger and Shumate allege that they have been unlawfully stopped without reasonable suspicion and asked to produce identification under threat of arrest, been searched without probable cause and told to leave public places where they are lawfully allowed to be under threat of arrest.  (Doc. 1, ¶¶ 54-56; 67; 79; 89; 92; 105; 133; 136; 244-247.)  In Counts 11-13, all Plaintiffs allege[12] that they are subject to City policies, practices and/or customs intentionally targeted at homeless individuals, violating their rights to equal protection and the right to travel.  (*Id.* at 137, 157, 184, 225, 226, 242, 244, 248, 314, 315, 318, 319, 325.)

Plaintiffs have made sufficient allegations as to their standing.

**V.  Defendant's Motion to Dismiss for failure to state a claim is without merit and should be denied**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Facial plausibility is found when a plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged.  The Court should assume that factual allegations are true, and then determine whether they state a plausible claim for relief.  *Id.*  at 1949-1950.

**A.  Plaintiffs state a plausible claim for relief that § 8-321 violates procedural due process (Counts 1 & 2)**

A section 1983 claim alleging a denial of procedural due process requires three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir.

---

[12]     Plaintiffs' allegations that they have been subject to these governmental actions at issue establish that they have suffered an injury-in-fact. (Doc. 1 ¶¶ 44-136; 164-168; 188; 192-201; 227-234; 239; 241; 243; 245-47;254; 255.)

2003.)  Plaintiffs allege all three elements and provide factual allegations in support.  (Doc. 1,
¶¶ 68-78; 112-123; 134-35; 169-201; 248-258; 263-64; 265-68; 271.)

Plaintiffs plead deprivation of a constitutionally protected property interest due to state
action.[13]  (*Id.,*  ¶¶ 184; 251.)  Plaintiff Shumate alleges city officials have taken his personal
property from city parks without notice, ostensibly pursuant to §8-321.[14]  (*Id.,*  ¶¶ 134-35.)
Plaintiffs Hargis and Reynolds allege that they have received Notice from Defendant that they
are in violation of § 8-321 and that if they do not remove their personal property from public
property, their property will be seized and stored by the City.  (Doc. 1 ¶¶ 68-78; 112-123.)  Once
Plaintiffs Hargis and Reynolds received the Notice of violation, they were not allowed to be in
any public place in the City with their belongings without violating the ordinance pursuant to §
8-321(d)(3) ("[m]oving the unlawfully stored items to another location on public property shall
not be considered to be removing the items from public property").  (*Id.,* ¶¶ 74-78; 117-123; 200-
201.)  Since Plaintiffs Hargis and Reynolds, both homeless individuals, are generally not entitled
to be on private property, a determination by City officials that their property is unlawfully
"stored" essentially deprives them of their right to maintain possession of their personal property
throughout the City.  (*Id.,*¶¶ 199-201.)  There is literally no public place where they are lawfully
allowed to have their personal possessions without risking seizure of their property, citation

---

[13]     Section 8-321(b) prohibits "storing" any item of personal property including clothing or
bedding on private or public property.  The ordinance provides that the term "store" "shall be broadly
interpreted to include any action to place, store, park, display, locate or set upon an item or items.  (Doc. 1 ¶¶
169-70.)

[14]     Plaintiffs allege that the city has posted permanent signs in city parks that state that all
"unattended" property may be removed without notice pursuant to § 8-321.  (Doc. 1 ¶ 185.)  Signs may be
posted on public property stating that unattended items may be removed immediately without any additional
notice only under certain enumerated conditions listed in § 8-321(d)(4).  (*Id.* at ¶ 186.)  However, Plaintiffs
allege that the signs posted in the public parks do not comply with the requirements of this subsection and
therefore do not constitute adequate notice under the ordinance's provisions.  (*Id.* at ¶ 187.)

and/or arrest.  (*Id.*, ¶¶ 77-78; 121-23.)

Finally, Plaintiffs plead constitutionally inadequate process.  At a minimum, the due process clause requires notice and the opportunity to be heard prior to the deprivation of property. *Grayden*, 345 F.3d at 1232.  Plaintiffs allege that Section 8-321 does not provide them with an opportunity to have a pre- or post- deprivation hearing to challenge the determination that their property has been unlawfully "stored."  (*Id.*, ¶¶ 180-81; 199.)  Although section 8-321(g)(3) provides for hearings prior to the removal of items unlawfully "stored" on ***private*** property, the ordinance contains no such provision for items unlawfully "stored" on ***public*** property.  (*Id.*, ¶¶ 180-81.)  Moreover, Plaintiffs allege that the ordinance fails to provide an opportunity, through a hearing or other process[15], to dispute the underlying determination that their property is being unlawfully "stored."   (*Id.* at 180-81; 199.)  This failure violates basic tenets of due process.  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)(Supreme Court has "consistently held that some form of hearing is required before an individual is finally deprived of a property interest.")[16]

Plaintiffs also allege sufficient facts to state a plausible claim that section 8-321 is void

---

[15]    Defendant argues that the hypothetical ability of Plaintiffs and putative class members to retrieve their personal items from city storage after seizure of their property is somehow a post-deprivation remedy. (Doc. 11 § A ¶ 4 at p. 3.) First, Plaintiffs have alleged that Defendant's procedures related to property storage and retrieval are deficient and has resulted in permanent deprivation of Plaintiff Shumate and putative class members' property.  (Doc. 1 ¶¶ 135; 198).  Second, even if Plaintiffs were able to retrieve their belongings, there is still no public place in the City where they are lawfully allowed to be with their personal property.  (*Id.*, ¶¶ 176; 200-01.)  Without the opportunity for judicial review, individuals who receive notices that their property is unlawfully stored either must choose to abandon property or risk future seizure, citation and/or arrest for continuous violations of the ordinance.  (*Id.*, ¶¶ 75-78;118-123)

[16]    Defendant cites to *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), for the proposition that a hearing is not always required prior to an initial deprivation.  However, the Court, in the very next sentence, states "This rejection is based in part on the impracticability in some cases of providing any pre-seizure hearing...and the assumption that *at some time a full and meaningful hearing will be available.*" *Id.* at 540-41. (emphasis added).  Plaintiffs allege that neither a pre- or a post- seizure hearing is available to them.

for vagueness.  (Doc 1. ¶¶ 68-78; 112-123; 134-35; 169-201; 248-260; 263-64; 265-267; 269-270.)  Vagueness may invalidate a law for two independent reasons: (1) it fails to provide notice to enable ordinary people to understand prohibited conduct; (2) it authorizes and encourages arbitrary and discriminatory enforcement.   *Chicago v. Morales*, 527 U.S. 41, 56 (1999).  Plaintiffs allege section 8-321 is void for vagueness for both of these reasons.  (Doc. 1, ¶¶ 259-60; 269-70.)   Plaintiffs allege that the definition of "store" creates confusion about what constitutes a violation.  (*Id.* at ¶ 76, 120, 201.)  The definition of "store" is so broad that if they merely "set" or "placed" a personal item such as a guitar or a sleeping bag on the sidewalk, it would be "unlawful storage" and a violation.  (*Id.*)  The "broad sweep" of the ordinance violates the constitutional requirement that a legislative body "'establish minimal guidelines to govern law enforcement.'" *Morales*, 527 U.S. at 60.  Thus, it is not surprising that Plaintiffs allege city officials have given them conflicting instructions about how much property they are allowed to have under the ordinance..  (*Id.*,  ¶¶  71-73, 194.)  Not only does the ordinance fail to give Plaintiffs notice of the prohibited conduct, it authorizes and encourages this type of arbitrary and discriminatory enforcement.  *Morales*, 527 U.S. at 56.  Thus, Plaintiffs have stated a claim that section 8-321 is unconstitutional, both on its face, and as-applied to them.

**B.  Plaintiffs state a plausible claim for relief that § 20-30 violates the First Amendment (Counts 3 & 4)**

"A prior restraint on expression exists when the government denies access to a public forum before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir. 2000).  Plaintiffs Catron, Hargis and Lupperger allege that they have been banned from

11

entering city parks, which are traditional public fora,[17] for periods of time ranging from one year to permanently.  (Doc. 1, ¶¶ 46-53; 59-66; 93-102.)  Plaintiffs allege that section 20-30 is a prior restraint on expression because they and other individuals who have received these trespass warnings are banned from returning to public parks, even for the purposes of engaging in protected First Amendment activity, without first applying for and receiving permission to enter the park.  (Doc. 1 ¶¶ 210-11; 233-34; 275.)[18]

A prior restraint on expression is unconstitutional if the permitting scheme fails to include "narrow, objective, and definite standards" to guide the government authority making these decisions.  *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–151 (1969).  Plaintiffs allege that section 20-30 is unconstitutional because it does not contain narrow, objective and definite standards to guide officials in deciding whether to grant or deny permission to enter public parks for the purpose of engaging in protected First Amendment activity.  (Doc. 1 ¶¶ 213-218; 233-34; 273-280; 283-287.)  Plaintiff Hargis wants to go into public parks  to play his guitar[19] but is prohibited from doing so pursuant to the trespass warnings.  (*Id.* at ¶ 64.)  Hargis has standing to challenge the provisions of section 20-30 as an unlawful prior restraint because he is challenging the ordinance's failure to provide constitutionally adequate procedural safeguards (Doc. 1, ¶¶ 272-287.)  *Frandsen*, 212 F.3d at 1236.  In addition, Plaintiffs allege that section 20-30 is constitutionally overbroad.  (Doc. 1 ¶ 279.)  For an overbreadth claim, a plaintiff

---

[17]   Parks are traditional public fora historically associated with the free exercise of expressive activities.  *United States v. Grace*, 461 U.S. 171, 177 (1983).

[18]   Section § 20-30(f) provides that a city employee "may authorize an individual who has received a trespass warning to exercise his or her First Amendment rights.  (Doc. 1 ¶ 211.)

[19]   Music is a form of inherently expressive conduct protected by the First Amendment.  *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989).

"must demonstrate a substantial risk that application of the provision will lead to the suppression of speech." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998).   Even if Plaintiffs' particular conduct is not constitutionally protected they may challenge that the law's "very existence may cause others not before the court to refrain from constitutionally protected... expression." *Bischoff*, 222 F.3d at 883-84.   Thus, Plaintiffs have stated a plausible claim for relief that section 20-30 is unconstitutional both on its face and as-applied.

**C.**   **Plaintiffs state a plausible claim for relief that § 20-30 violates  due process**

In Counts 5 and 6 Plaintiffs state a plausible claim for relief that section 20-30 violates procedural due process.   Plaintiffs allege that Defendant, through the issuance of trespass warnings under section 20-30 (state action) for public property such as public parks, has deprived them of constitutionally protected liberty interests without constitutionally adequate process (Doc. 1, ¶¶ 46-53; 59-66; 93-96; 100-02; 137; 202-234; 288-297).   *Grayden*, 345 F.3d at 1232.

Plaintiffs allege the deprivation of constitutionally protected liberty interests, the right to move freely throughout the city and to go into public parks when they are open to the general public to engage in inherently innocent activities.   Plaintiffs Catron, Hargis and Lupperger allege that city officials have issued them trespass warnings for city parks pursuant to section 20-30 and arrested them for trespassing for being present in public parks during times when the parks are open to the general public pursuant to these warnings.   (Doc. 1, ¶¶ 46-53; 59-66; 93-96; 100-102).   Plaintiff Catron has been permanently banned from going to all city parks.   (*Id*., ¶ 46.) There is no requirement that an individual be arrested or even convicted of a particular crime prior to receiving a trespass warning.   (Doc. 1 ¶ 203.)   A person may receive a trespass warning for merely "violating" a city ordinance, rule, regulation, or even a "lawful directive" of a city official.   (*Id.*)   Plaintiffs plead that Defendant has not provided a mechanism for judicial review,

or any type of hearing, of the underlying basis for receiving a trespass warning, which has allowed city officials to ban them from public places, including public parks, for long periods of time, without constitutionally adequate process. (*Id.,* ¶ 292.)   Failing to provide a hearing prior to depriving someone of a liberty interest violates due process. *Matthews*, 424 U.S. at 333.

Plaintiffs also claim that section 20-30 is void for vagueness as it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and that it encourages arbitrary and discriminatory enforcement (Doc. 1 ¶¶ 59-66; 93-96; 100-02; 202-234; 248-256; 288-297).  *Morales*, 527 U.S. at 56.  Plaintiffs allege that section 20-30 fails to define key terms and phrases such as "lawful directive".  (Doc. 1, ¶¶ 204, 218.)  This omission fails to put Plaintiffs on notice of what conduct can trigger issuance of a trespass warning.  Plaintiffs also allege that section 20-30 fails to establish minimal guidelines for city officials and police officers, granting them unbridled discretion to determine when to issue a trespass warning, for what behaviors and for how long.  (Id. at ¶¶ 46-48; 59; 61; 93, 100; 292.)  *Morales*, 527 U.S. at 60.  Section 20-30 is unconstitutional both facially and as-applied.

**D.    Plaintiffs state a plausible claim for relief that § 20-82 violates procedural due process (Counts 7 & 8)**

Plaintiffs state a plausible claim for relief that § 20-82 is void for vagueness, in violation of the due process clause.   *Id.* at 56.  Plaintiffs allege that the ordinance does not define the criminal offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited and that it encourages arbitrary and discriminatory enforcement.  (Doc. 1 ¶¶ 67; 86-88; 92; 103-04; 133; 151-57; 165-68.)  In particular, the ordinance fails to define key terms and phrases such as the term "recline."  (Doc. 1 ¶ 153, 300.)  Plaintiff Lile alleges he does not understand the conduct prohibited and is afraid he will be cited and/or arrested under this

14

ordinance.  (*Id.* at ¶ 87-88, 165, 167.)  Since the ordinance fails to provide standards to guide law enforcement, it authorizes and encourages arbitrary and discriminatory enforcement.  *Morales*, 527 U.S. at 60.  Section 20-82 is unconstitutional on its face, and as-applied.

**E.  Plaintiffs state a plausible claim for relief that Defendant is violating the Eighth Amendment (Count 9)**

Plaintiffs allege that arresting them for involuntary, life-sustaining activity such as public urination at times and places where there are no public bathrooms open, available and accessible to them violates the Eighth Amendment.  The Eighth Amendment imposes limits on what can be made criminal and punished as such.  *Ingraham v. Wright*, 430 U.S. 651, 667 (1977).  The Supreme Court has long made clear that it is beyond the power of the government to punish individuals based on their involuntary status alone.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962).  In *Powell v. Texas*, 392 U.S. 514, 532 (1968), the Supreme Court applied *Robinson* but held that defendant's conviction did not warrant reversal under the cruel and unusual punishment clause because he was not being punished for mere *status*, as in *Robinson*, but for public *behavior.*  Justice White supplied the fifth and deciding vote but he did not join the majority opinion and instead wrote a concurring one in which he stated that he concluded the statute in *Powell* did not violate the Eighth Amendment **only** because the conduct at issue was not involuntary.  *Id.* at 551-554 (concurring, White, J.).

The Ninth Circuit adopted as controlling precedent the analysis of the "five Justices in *Powell* [who] understood *Robinson* to stand for the proposition that the Eighth Amendment prohibits the state from punishing an involuntary act or condition if it is the unavoidable consequence of one's status or being." *Jones v. City of Los Angeles*, 444 F. 3d 1118, 11135 (9th

15

Cir. 2006), vacated per settlement at 505 F.3d 1006 (9th Cir. 2007).[20]   The Ninth Circuit considered the involuntariness of conduct to be a decisive factor when determining the limit's of the state's power under the Eighth Amendment.  *Id.* at 1132.

Applying *Robinson*, *Powell*, and the Ninth Circuit's instructive opinion in *Jones*,  to state a claim that a governmental action exceeds the limits of the Eighth Amendment's Cruel and Unusual Punishment Clause, it must be alleged that a particular government action criminalizes (1) status or (2) involuntary conduct integral to and an unavoidable result of that status.  Here, Plaintiffs alleged that the City has a policy, custom and/or practice of arresting or citing Plaintiffs and the putative class for life-sustaining activities such as public urination/defecation under City Code 20-123 or Fla. Stat. 877.03 at times and places when there are no public bathrooms open, available and accessible to homeless people.  (Doc. 1 ¶ 242.)

*Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992) is persuasive in concluding that life-sustaining activities conducted in public by homeless persons are involuntary conduct inextricably intertwined with their homeless condition.  The court determined that not only was the plaintiffs' homeless condition involuntary[21], but that conducting life-sustaining activities in public was also involuntary.  *Id.* at 1565 (For the homeless plaintiffs, avoiding public

---

[20]    The Ninth Circuit gave the following explanation for adopting this position as controlling precedent: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds..."  *Jones*, 444 F. 3d at 1135-36.

[21]    Defendant cites *Joel v. City of Orlando*, 232 F.3d 1353 (11th Cir. 2000), for the proposition that a public sleeping ordinance did not criminalize involuntary behavior.  The *Joel* plaintiff was not successful on his claim that Orlando's "camping in public" ordinance punished him for involuntary behavior in violation of the Eighth Amendment because the court relied on unrefuted evidence that a local homeless shelter had never turned anyone away. *Id.* at 1362.  Thus, the court found the ordinance did not criminalize involuntary behavior. *Id.*  Given that Defendant's own report indicates a significant gap in the availability of shelter space for homeless individuals (Doc. 1 ¶ 34), Defendant's reliance on *Joel* is misplaced.

places as well as "resisting the need to eat, sleep or engage in other life-sustaining activities is impossible.")

In the instant case, Plaintiffs allege that they are homeless, and that there is a lack of available shelter space in the City of St. Petersburg.  (Doc. 1 ¶¶ 1-2; 25-27; 34-35; 44-45; 57-58; 80-81; 90-91; 106-07; 125-26.)  Plaintiffs Lile, Lupperger and Shumate have alleged that they have been arrested for life-sustaining activities such as public urination/defecation under City Code 20-123 or Fla. Stat. 877.03 at times and places when there are no public bathrooms open, available and accessible to homeless people.  (*Id.*, ¶¶ 82-84; 97-99; 127-129. ) Plaintiff Reynolds alleges that she has kidney problems and she risks exacerbating her condition by depriving herself of essential fluids because she fears she will be arrested for public urination at times when there are no public restrooms open, available and accessible to her.  (*Id.*, ¶ 124.) Thus, Plaintiffs allege sufficient facts to state a plausible claim for relief that punishing them for engaging in involuntary life-sustaining activities in public that are inextricably intertwined with their homeless condition violates the Eighth Amendment.  (*Id.*, 235-43; 308-10.)

**F.  Plaintiffs state a plausible claim for relief that Defendant is violating the Fourth Amendment (Count 10)**

Plaintiffs allege that Defendant's policy, custom and/or practice of: (a) stopping Plaintiffs without any reasonable suspicion of criminal activity and asking for their identification under threat of arrest; (b) searching the possessions of Plaintiffs who have been stopped without probable cause[22]; and (c) directing Plaintiffs to leave public areas where they are lawfully allowed to be under threat of arrest in a concerted effort to intimidate homeless people from

---

[22]    The Fourth Amendment requires that searches and seizures be reasonable.  *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).  Without "individualized suspicion of wrongdoing" a search or seizure is unreasonable.  *Id.*

17

departing the area violate the Fourth Amendment rights of Plaintiffs to be free from unreasonable searches and seizures.  (Doc. 1 ¶ 312.)  Plaintiffs allege sufficient facts in support of this claim to state a plausible claim for relief.  (*Id.* at ¶¶ 54-56; 67; 79; 86; 89; 92; 105; 133; 244-47; 312.)

An investigatory stop occurs when a police officer engages in contact with an individual, other than an arrest or a consensual encounter.  *State v. Bostick*, 501 U.S. 429 (1991).  In order for an investigatory stop to be constitutional, it must be (1) reasonable in its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place.  *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).  When police officers have no basis for suspecting a particular individual, they may generally ask questions, ask to see identification, and request consent to search personal effects as long as the they do not convey a message that compliance with their request is required.  *Bostick*, 501 U.S. at 434-35.  A court must evaluate whether a reasonable person would believe he was free to decline the officers' requests or otherwise terminate the encounter."  *Id.* at 439.  Plaintiffs allege that they have been subjected to investigatory stops by City police officers that were not consensual encounters and occurred under threat of arrest.  (Doc. 1 ¶¶ 54-55; 79; 89; 105; 245.)  These facts are sufficient to support a plausible claim for relief that these investigatory stops are unconstitutional.

**G.  Plaintiffs state a plausible claim for relief that Defendant is violating the Equal Protection Clause (Count 11)**

To state a claim for status-based discrimination, Plaintiffs must allege that the government acted with "discriminatory purpose" which implies that the decision maker selected a particular course of action at least in part "'because of' its adverse effects on an identifiable group.*"  In re Employment Discrimination Litigation Against State of Ala.*, 198 F.3d 1305, 1319 (11th Cir. 1999.)  Plaintiffs allege that Defendant's policies, practices and customs (Doc. 1, ¶¶

18

19, 137, 157, 184, 225, 226, 242, 244, 248-251)   are intentionally targeted at homeless individuals to intimidate and drive them from the public streets, sidewalks, and public areas of the City and to make it difficult to access the shelters, bathrooms, and service providers that provide them with essential services of daily life.   (*Id.* at  ¶ 314)  Defendant's policies discriminate against Plaintiffs based on their status as homeless individuals and are not rationally related to a legitimate governmental interest.  (*Id.* at ¶ 314.) *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (governmental action must be rationally related to a legitimate governmental purpose if it does not implicate a fundamental right or target a suspect class.) Plaintiffs allege sufficient facts to support a plausible claim for relief.  (*Id.* at ¶¶ 1-256.)

## H.  Plaintiffs state a plausible claim for relief that Defendant is violating the Right to Travel under the U.S. Constitution (Count 12)

Plaintiffs allege that Defendant's policies, customs and/or practices (Doc. 1, ¶¶ 19, 137, 157, 184, 225, 226, 242, 244, 248-251) burden their fundamental right to travel.  *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969)(overruled in part on other grounds, *Edelman v. Jordan*, 415 U.S. 651 (1974).  Specifically, they argue that the City's enforcement of certain policies to punish homeless individuals who have no place to go for sleeping, lying down, using public bathrooms, eating, keeping personal property, being in public parks and on public sidewalks and performing other life-sustaining activities burdens their fundamental right to travel.  (*Id.* at ¶ 318.)  These policies, customs or practices prevent homeless people from coming into the City, expelling those already present, infringe on the right to travel locally through public spaces and roadways, and significantly burden their freedom of movement.  (*Id.* at ¶ 319.)

Since Plaintiffs alleged the deprivation of the fundamental right to travel, Defendant's actions (*Id.* at ¶¶ 320, 322) are subject to strict scrutiny.  *Cleburne*, 473 U.S. at 440.  Plaintiffs'

claims implicate both interstate and intrastate travel.  The fundamental right to intrastate travel has not been expressly endorsed by the Supreme Court, but several circuits recognize this as a fundamental right.  *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 255-56 (1974) (declining to consider whether there is a constitutional distinction between interstate and intrastate travel); *See also*, *e.g.*, *Lutz v. City of York*, 899 F.2d 255, 268 (3rd Cir. 1990) (right to travel locally deeply rooted in the nation's history).  Whether there is a fundamental right to intrastate travel is an open question in the Eleventh Circuit, but this was recognized as a right in *Pottinger*.  810 F.Supp. at 1578-83.  Plaintiffs have alleged sufficient facts to support a plausible claim for relief.   (*Id.* at ¶¶  1-256.)

### I.  Plaintiffs state a plausible claim for relief that Defendant  is violating the Right to Intrastate Travel, Art. 1, § 2 of the Florida Constitution[23]

Contrary to Defendant's incorrect assertion (Doc.11, § M, ¶ 3 at p. 22.), the right to intrastate travel has been recognized as fundamental under the Florida constitution.  *State v. J.P.*, 907 So.2d 1101, 1113 (Fla. 2004).  Plaintiffs allege in Count 13 that Defendant's policies (Doc. 1, ¶¶ 19, 137, 157, 184, 225, 226, 242, 244, 248-251) burden their fundamental right to intrastate travel.  (*Id*., ¶ 324-25.)  Under the Florida Constitution's Equal Protection clause, Article I § 2, the analysis is the same as equal protection claims brought under the U.S. Constitution.  *Snair v. City of Clearwater*, 787 F.Supp. 1401, 1412 (M.D. Fla. 1992).   Plaintiffs allege that Defendant's actions fail strict scrutiny review and thus violate the Florida constitution.  (Doc. 1, ¶ 325-26.)  Plaintiffs allege sufficient facts to support a plausible claim for relief.  (*Id*., ¶¶ 1-256.)

---

[23]     Plaintiffs inadvertently cited to this provision of the Florida Constitution as Article I § 9 in two places in the complaint (Doc. 1 ¶ 1, and in heading for Count 13 on p. 59.)  This was a typographical error. Plaintiffs are bringing this claim under Florida's equal protection clause, Article I § 2.

Dated this 10th day of <u>July</u>, 2009.

Respectfully Submitted,

   <u>/s/ Kirsten Clanton</u>
Kirsten Clanton, Fla. Bar No. 17179
<u>kirsten.clanton@southernlegal.org</u>
Neil Chonin, Fla. Bar No. 13428
<u>neil.chonin@southernlegal.org</u>
Alice K. Nelson, Fla. Bar No. 211771
<u>alice.nelson@southernlegal.org</u>
Southern Legal Counsel, Inc.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)

Peter P. Sleasman, Fla. Bar No. 367931
<u>psleasman@filsinc.org</u>
Florida Institutional Legal Services, Inc.
12921 SW 1st Road, Ste. 107, #346
Newberry, FL 32669
(352) 375-2494
(352) 331-5202 (fax)

Catherine A. Bendor, D.C. Bar No. 442437
<u>cbendor@nlchp.org</u>
Tulin Ozdeger, D.C. Bar No. 476548
<u>tozdeger@nlchp.org</u>
National Law Center on Homelessness & Poverty
1411 K St., NW, Suite 1400
Washington, D.C. 20005
(202) 638-2535
(202) 628-2737 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of July, 2009, a true and correct copy of the foregoing was furnished by electronic notification through the CM/ECF system to the following:

Joseph P. Patner
Attorney for Defendant
Assistant City Attorney
P.O. Box 2842
St. Petersburg, FL 33731
(727) 893-7401
(727) 892-5262 (fax)
Joseph.Patner@stpete.org

/s/ Kirsten Clanton
Attorneys for Plaintiffs