UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATRON et al.,

     Plaintiffs,

v.                                  CASE NO.: 8:09-cv-923-T-23EAJ

CITY OF ST. PETERSBURG,

     Defendant.

_____/

## ORDER

The plaintiffs sue (Doc. 1) the defendant (the "City") and seek declaratory and

injunctive relief pursuant to 42 U.S.C. § 1983 ("Section 1983") for a violation of the

plaintiffs' rights under the First, Fourth, Eighth, and Fourteenth Amendments to the

United States Constitution and Article I, Section IX of the Florida Constitution.  The City

moves (Doc. 11) to dismiss or for summary judgment on the complaint and the plaintiffs

respond (Doc. 16) in opposition.

Standard of Review

Summary judgment is proper if the evidence shows "that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Rule 56(c), Federal Rules of Civil Procedure.  However, "summary judgment may

. . . be decided [only] upon an adequate record."  Fernandez v. Bankers Nat. Life Ins.

Co., 906 F.2d 559, 570 (11th Cir. 1990).  "[S]ummary judgment should not be granted

until the party opposing the motion has had an adequate opportunity for discovery."

Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988); Fed. R. Civ. P. 56(f).

Because no opportunity for discovery occurred before the City's motion, the motion is treated as a motion to dismiss and the affidavits attached to the City's motion are disregarded. In reviewing a motion to dismiss, the facts alleged in the complaint are assumed true and construed favorably to the plaintiff. Beck v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1998) (citing St. Joseph's Hospital, Inc. v. Hospital Corp. of Am., 795 F.2d 948 (11th Cir. 1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007). Neither a conclusory allegation nor "a legal conclusion couched as a factual allegation" provides support for the sufficiency of a complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996). To state a claim under Section 1983, the plaintiff must establish both that the City deprived the plaintiff of a right secured by the Constitution or laws of the United States and that the deprivation occurred under color of state law. Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003).

### Background

The complaint alleges the following, which is presumed true during consideration of the motion to dismiss (but not afterward): Approximately 2,232 homeless individuals live in Pinellas County and lack shelter (Doc. 1, ¶ 25-26; Doc. 1-2, Ex. A). Nearly forty-six percent of the individuals sleeping without shelter live primarily in the City. (Doc. 1,

¶ 27)  Insufficient publicly provided shelter exists to accommodate every homeless individual residing in the City (Doc. 1, ¶¶ 34-35).  Each plaintiff sleeps on a public street or sidewalk in St. Petersburg if the plaintiff cannot afford shelter and publicly provided shelter is unavailable.

Anthony Catron ("Catron") is twenty-three and homeless.  In 2006 and in 2007, pursuant to Section 20-30 of the St. Petersburg City Code ("Section 20-30"), a police officer issued a trespass warning to Catron which prohibits Catron from entering Williams park or any other city park.[1]  The police told Catron that the trespass warning for Williams Park applied "curb to curb" and prohibited Catron from (1) walking on the sidewalk outside the park, (2) using a public restroom in the park, and (3) sitting in a bus shelter outside the park.  The police arrested Catron approximately ten times for violating a trespass warning.  Each arrest occurred when the park was open to the general public.  As a result of the trespass warning, Catron cannot, without risking arrest, enter the park and obtain food offered in the park by a community group that assists the homeless.  In addition, the police intermittently detain Catron[2] and demand identification "without reasonable suspicion of criminal activity."  If Catron fails to produce identification, the police search Catron and threaten Catron with arrest.  If Catron sleeps on a sidewalk or other city property, police awaken Catron, demand that Catron relocate, and threaten Catron with arrest.  (Doc. 1, ¶¶ 44-56)

---

[1] The August 23, 2006, trespass warning applies to "all of Williams Park" and "all city parks" and remains in effect "permanently."  (Doc. 1, ¶ 46) The August 29, 2007, trespass warning applied to unspecified public property and remained effective for one year.  (Doc. 1, ¶ 47)

[2] Hargis, Lile, Lupperger, and Shumate—the other named plaintiffs—allege that the police periodically stop the plaintiffs "without reasonable suspicion of criminal activity" and demand identification. (Doc. 1)

Charles Hargis ("Hargis") is forty-seven and homeless. Hargis received a trespass warning in each of two city parks.[3] Before receiving the trespass warning, Hargis entered Williams Park for the purpose of playing guitar, drawing, or visiting monuments dedicated to war veterans. Hargis cannot, without risking arrest, enter the park to use the public restroom or engage in any other activity in the park. (Doc. 1, ¶¶ 57-79) In 2009, the police issued a notice to Hargis because Hargis had "'too much stuff'"—more belongings than Hargis could carry—and Section 8-321 of the St. Petersburg City Code ("Section 8-321") prohibits the storage of personalty on public property.[4] Because Hargis cannot afford to store his belongings in a private facility, Hargis must either abandon his personal property or risk arrest for violating the ordinance. (Doc. 1, ¶¶ 57-79)

Michael Lile ("Lile") is fifty-seven, a veteran of the United States Army, and homeless since 2008. On April 25, 2008, pursuant to Section 20-123 of the St. Petersburg City Code ("Section 20-123") the police arrested Lile for public urination. At the time, no public restroom was available. Lile served five days in jail and incurred fines and costs. On another occasion, the police told Lile that the City Code prohibits reclining on a public sidewalk and that Lile must "sit up straight" or face arrest. (Doc. 1, ¶¶ 80-89)

---

[3] Hargis received a trespass warning in 2007 for Williams Park and in 2008 Mirror Lake Park. The 2007 trespass warning remains effective for two years. (Doc. 1, ¶ 59) The 2008 trespass warning remains effective for a year. (Doc. 1, ¶ 61)

[4] Section 8-321 defines "store" to include "any action to place, store, park, display, locate, or set upon." (Doc. 1-2, Ex. D)

Ferdinand Lupperger ("Lupperger") is fifty-six and homeless since 2005. Lupperger received a trespass warning for Williams Park and served jail time for violating the warning. On June 10, 2008, when no public restroom was available, the police arrested Lupperger for public defecation. Lupperger served jail time and incurred fines and costs. The police cited Lupperger for violating Section 20-82 of the St. Petersburg City Code ("Section 20-82") (Doc. 1-2, Ex. C), which prohibits sleeping or reclining on a public sidewalk during daylight hours. (Doc. 1, ¶¶ 90-105)

Jo Anne Reynolds ("Reynolds") is fifty-two and bound to a wheelchair. Homeless since early 2009, Reynolds stores personal property belonging to Reynolds and Reynolds's boyfriend either in Reynolds's wheelchair or in close proximity to the wheelchair. The police issued a notice to Reynolds pursuant to Section 8-321 and ordered Reynolds to remove the property within thirty-six hours. Like Hargis, Reynolds must either abandon her personal property or risk arrest for violating the ordinance. In addition, because Reynolds suffers from a kidney ailment and requires frequent access to a restroom, Reynolds fears arrest for public urination when no public restroom is available. (Doc. 1, ¶¶ 106-24)

William Shumate ("Shumate") is sixty-one, a Vietnam veteran, and homeless since 2005. Shumate is a diabetic and often needs access to a restroom. In 2007, when no public restroom was available, the police arrested Shumate for public urination. Shumate served a day in jail and incurred a fine. Around the same time, Shumate began sleeping in a tent on a public sidewalk in the City to protest the lack of shelter for the homeless. In response, the police "slashed" the tent and seized some property.

Pursuant to Section 20-82, the police told Shumate and others sleeping on the public sidewalk near City Hall to leave the sidewalk during the day. Additionally, a city official confiscated Shumate's property without notice and failed to inform Shumate of the procedure for retrieving the property. Afterward, Shumate located the city storage facility and arranged to retrieve the confiscated property. Because no city official appeared at the appointed time, Shumate could not reclaim his property. (Doc. 1, ¶¶ 125-36)

The plaintiffs allege that the enactment and the enforcement of the City's ordinances establish a policy or custom of "harassing or otherwise interfering with homeless people for engaging in the ordinary and essential activities of daily life." (Doc. 1, ¶¶ 137-256) The police continually warn, cite, and arrest the plaintiffs for sleeping, sitting, eating, carrying personal items, alleviating "personal needs,"[5] and associating with friends and family. The plaintiffs further allege that the method of enforcement ignores the ordinance's enforcement guideline.[6]

In addition, the plaintiffs seek declaratory and injunctive relief and claim that (1) under the Due Process Clause of the Fourteenth Amendment, Section 8-321

---

[5] A personal need includes using the public restroom or urinating and defecating in public when no restroom is available.

[6] In support of the allegation, the plaintiffs describe two memoranda by the police chief that describe the proper method of enforcing the prohibition against sleeping on public property. The memoranda advise an officer to educate the individual that is observed sleeping "in the right of way" about the ordinance and "'afford the [individual] the opportunity to voluntarily comply . . . by vacating the right of way.'" (Doc. 1, ¶¶ 159-163) The memoranda further advise that if no shelter space exists an officer should not charge the individual with a violation of the ordinance. Nonetheless, police have directed the plaintiffs to vacate public sidewalks when shelter is unavailable. Additionally, the police conduct "property sweeps" and warn owners of unattended property that the police may remove the property without notice. The warning purportedly fails to comply with the requirement of Section 8-321. Additionally, in enforcing the ordinance, the police give inconsistent guidance on the amount of personal property that an individual may possess.

(prohibiting storage of personal property on public property), Section 20-30 (prohibiting

trespass on city property), and Section 20-82 (prohibiting sleeping on a right of way) are

facially unconstitutional; (2) under the Due Process Clause of the Fourteenth

Amendment, Sections 8-321, 20-30, and 20-82 are unconstitutional as applied;

(3) under the First Amendment, Section 20-30 is facially unconstitutional and

unconstitutional as applied; and that the City violated the plaintiffs' right under (4) the

Eighth Amendment to be free from cruel and unusual punishment, (5) the Fourth

Amendment to be free from unreasonable search and seizure, (6) the Fourteenth

Amendment to enjoy equal protection of the law, (7) the Fourteenth Amendment to

travel, and (8) the Florida Constitution, Article I, Section IX, to travel intrastate.  The City

argues that the plaintiffs lack standing to sue and that, even if the plaintiffs have

standing, the plaintiffs fail in each count to state a claim for relief.

Discussion

I. Standing

Standing in federal court "in no way depends on the merits of the plaintiff's

contention that particular conduct is illegal . . . ."  Warth v. Seldin, 422 U.S. 490, 500

(1975).  Standing requires that (1) the plaintiff suffer an actual or imminent injury that is

"'concrete and particularized'" and not "'conjectural or hypothetical,'" (2) the injury be

"fairly traceable" to the defendant's conduct, and (3) a favorable decision redress the

plaintiff's injury.  Northeastern Fla. Chapter, Associated Gen. Contractors of America v.

City of Jacksonville, 508 U.S. 656, 663-64 (1993) (quoting Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992)).  To satisfy the first requirement, the plaintiff must

- 7 -

show more than "a mere interest."  Sierra Club v. Morton, 405 U.S. 727, 739 (1972);

compare United States v. Students Challenging Regulatory Agency Procedures

(SCRAP), 412 U.S. 669, 684-89 (1973) (showing an aesthetic or environmental injury

suffices if the injury is personal).  Thus, an injury to a common law, constitutional, or

statutory right generally satisfies the requirement.  See Joint Anti-Fascist Refugee

Comm. v. McGrath, 341 U.S. 123, 152 (1951) (Frankfurter, J., concurring) ("A litigant

ordinarily has standing to challenge governmental action of a sort that, if taken by a

private person, would create a right of action cognizable by the courts.").  The second

requirement of standing depends on "the causal connection between the assertedly

unlawful conduct and the alleged injury."  The third requirement depends on "the causal

connection between the alleged injury and the judicial relief requested."  Allen v. Wright,

468 U.S. 737, 753 n.19 (1984).

    In addition, a plaintiff seeking injunctive or declaratory relief must show a

likelihood of future harm.  City of Los Angeles v. Lyons, 461 U.S. 95, 105-07 (1983).

"Past exposure to illegal conduct does not in itself show a present case or controversy

[for] injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

Lyons, 461 U.S. at 102 (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

Although "courts are 'generally . . . unwilling to assume that [a plaintiff] seeking

injunctive relief will repeat the type of misconduct that would once again place [the

plaintiff] at risk of that injury,'" an assumption is warranted if "for reasons beyond the

plaintiff's control [the plaintiff] is unable to avoid repeating the conduct that led to the

original injury at the hands of the defendant."  Church v. City of Huntsville, 30 F.3d

1332, 1337-38 (11th Cir. 1994) (Carnes, J.) (quoting Honig v. Doe, 484 U.S. 305, 320 (1988)).

For example, in Church the plaintiffs alleged that the city's policy deprived the homeless of constitutional rights. A preliminary injunction enjoined the city from harassing or isolating the homeless or using code enforcement to "shut down, close, or condemn" a homeless shelter absent a "clearly demonstrable, imminent danger" to the public welfare. On appeal, the city argued that the plaintiffs lacked standing to assert a right to injunctive relief. The city's argument failed because of the "allegedly involuntary nature of [the plaintiffs'] condition." Because the evidence showed that the plaintiffs were involuntarily homeless, the plaintiffs could not "avoid future 'exposure to the challenged course of conduct' in which the [c]ity allegedly engage[d]." Church, 30 F.3d at 1335-38.

The plaintiffs allege several instances of injury. First, the City enforced and threatened enforcement of one or more of the ordinances against each plaintiff. Plaintiff Hargis engaged in spontaneous expression—playing the guitar and drawing—before receiving a trespass warning pursuant to Section 20-30. After the warning, Hargis desires to enter the park and engage in expressive activity but cannot do so without either (1) applying for, and receiving permission to, engage in First Amendment activity or (2) facing arrest pursuant to Section 20-30. Although the plaintiffs allege (and this order assumes momentarily) that no shelter or public restroom is available for the plaintiffs' use, each plaintiff served jail time and faces further incarceration for similar public activity. Furthermore, the plaintiffs Catron, Hargis, Lile, Lupperger, and Shumate

allege that the City stopped each plaintiff "without reasonable suspicion of criminal activity" and searched each plaintiff without permission or under threat of arrest.

Based on the allegations of the complaint, the plaintiffs have standing to challenge—under the First, Fourth, Eighth, and Fourteenth Amendments—the constitutionality of each ordinance as applied to the plaintiffs. The plaintiffs articulate an actual or imminent injury that is personal to the plaintiffs and based on an alleged violation of a constitutional right. A definite causal connection exists between the alleged conduct of the City and the alleged injury suffered by the plaintiffs, and a favorable ruling could redress the alleged injury. On the plaintiffs' claim for injunctive relief, the plaintiffs allege that the plaintiffs are involuntarily homeless, just as the plaintiffs alleged in Church, 30 F.3d at 1338. Specifically, the complaint alleges that each plaintiff lives on public property only if the plaintiff cannot afford shelter or if public shelter is unavailable. Therefore, the plaintiffs' standing derives from the plaintiffs' involuntary condition and the plaintiffs' consequent exposure to the City's alleged course of conduct.

However, the plaintiffs' facial challenge to Sections 8-321, 20-30, and 20-82 on vagueness grounds fails for lack of standing. A facial challenge fails unless a plaintiff "demonstrate[s] that the law is impermissibly vague in all of its applications." Whiting v. Town of Westerly, 942 F.2d 18, 22 (1st Cir. 1991). Accordingly, a plaintiff who engages in clearly proscribed conduct "'cannot complain of the vagueness of the law as[]applied to the conduct of others,'" Joel v. City of Orlando, 232 F.3d 1353, 1359-60 (11th Cir. 2000) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S.

489, 494-95 (1982)) (finding that a homeless person whose conduct fell within the scope of a municipal ordinance that prohibited camping could not maintain a facial challenge to the ordinance)); Parker v. Levy, 417 U.S. 733, 756 (1974) (finding that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").[7] Therefore, the application of the challenged ordinance to the plaintiffs' conduct must be examined "before analyzing other hypothetical applications of the law." 455 U.S. at 495.

In this instance, each plaintiff engaged in some conduct unambiguously proscribed by each ordinance. Section 8-321 prohibits storage of personal property on public property. (Doc. 1-2, Ex. D) The term "store" or "stored" means "any action to place, store, park, display, locate, or set upon," and the term "public property" includes "public rights-of-way." The plaintiffs' retention of personal effects on property within a public park or on a sidewalk surrounding a city building falls within the ordinance's definition of "store."

Each plaintiff engaged in conduct falling within the scope of Section 20-30 (Doc. 1-2, Ex. G), which prohibits trespassing on public property. Under Section 20-30, a city official may issue a trespass warning to an individual who, while on pubic property, violates an ordinance, regulation, state law, or "lawful directive" of a city

_____

[7] The rule is different, however, for an overbreadth challenge under the First Amendment. Court of Ulster County v. Allen, 442 U.S. 140, 155 (1979) (noting that "[a] limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment.") For example, a plaintiff has standing to challenge a statutory scheme as either unconstitutionally overbroad or as vesting too much discretion in a licensing official even if the plaintiff failed to apply for a license. Naturist Soc., Inc. v. Fillyaw, 958 F.2d 1515, 1521 (11th Cir. 1992); Freedman v. Maryland, 380 U.S. 51, 56 (1965). Because of this rule, the plaintiffs have standing to bring a facial challenge to Section 20-30 under the First Amendment.

official.  If the person enters the public property in violation of the warning, the person is

subject to arrest for trespassing.  The plaintiffs Catron, Hargis, and Lupperger each

received a trespass warning pursuant to Section 20-30 for conduct that purportedly fell

within the scope of Section 20-30.  Even if a trespass warning fails to describe the

violation underlying the warning,[8] the warning notifies each recipient that entry onto the

property for which the trespass warning was issued is forbidden.  On several occasions,

the police arrested Catron, Hargis, and Lupperger for entering a public park in violation

of a trespass warning prohibiting entry into the park.

 Section 20-82 (Doc. 1-2, Ex. C) prohibits sleeping, lying, or reclining on a "right-

of-way," which is defined as a public street, sidewalk, or walkway.  According to the

complaint, each plaintiff sleeps on a public street or sidewalk in St. Petersburg in the

absence of available shelter.  On several occasions, city officials awakened the plaintiffs

and ordered that the plaintiffs to stop sleeping on public property.

Because each ordinance specifically proscribes the plaintiffs' conduct, the

plaintiffs lack standing to bring a facial challenge to Sections 8-321, 20-30, and 20-82.

## II.  Municipal Liability

Municipal liability arises under Section 1983 only if the municipality maintains an

unconstitutional policy or custom.  <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658, 690-91

(1978).  A plaintiff establishes a municipal policy or custom by showing, for example,

(1) the enactment of an ordinance, or (2) a final decision on government policy rendered

by an official with authority to decide.  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469,

---

[8] Catron alleges that neither trespass warning issued to Catron "states the underlying violation that authorized the police officer to issue" the warning.  (Doc. 1, ¶ 48)

480-83 (1986) (finding that "a single decision by . . . [a properly constituted legislative] body unquestionably constitutes an act of official government policy" and that a decision by an official "responsible for establishing final government policy" constitutes an official policy).  Another method of establishing a municipal policy or custom is to show a municipal practice that is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).  "'[I]t is generally necessary to show a persistent and widespread practice. Actual or constructive knowledge of such customs must be attributed to the governing body of the municipality.  Normally random acts or isolated incidents are insufficient to establish a custom or policy.'" Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) (quoting Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986)).

In this instance, the plaintiffs fail to show that any ordinance on its face establishes an unconstitutional municipal policy.  Each ordinance furthers some legitimate public purpose.  In addition, the plaintiffs fail to show that the City has adopted an "anti-homeless policy."  In support of the plaintiffs' claim that the City has an "anti-homeless policy," the plaintiffs allege that the City arrested each of the plaintiffs pursuant to a city ordinance "based solely on the fact that [the plaintiffs] sleep, sit, eat, carry personal items, take care of personal needs, and associate with friends and family in public."  (Doc. 1, ¶ 137)  The plaintiffs allege that the City engaged in an unlawful custom or practice by allowing an officer to stop each plaintiff "without reasonable suspicion of criminal activity" and, under threat of arrest, search the plaintiff's

- 13 -

belongings.  In addition, the plaintiffs allege that (1) 2,232 "unsheltered" homeless live in Pinellas County; (2) 45.6 percent of the unsheltered homeless live in the City; (3) insufficient, gratuitous shelter or housing for the homeless exists in the City; (4) 3,789 homeless were arrested from 2005 to 2008 in Pinellas County; and (5) 3,844 arrests for a local ordinance violation occurred for 1,997 individuals from 2005 to 2008 in Pinellas County.

The plaintiffs' factual allegations fail to show an "anti-homeless policy."  The mere fact that the City arrested each plaintiff for the violation of an ordinance fails to support any claim of discriminatory or harassing conduct.  The number of homeless living without shelter in the City and the number of arrests for an ordinance violation show no custom or practice of discriminating against the homeless.  Although a custom of conducting unlawful searches and seizures would violate the plaintiffs' Fourth Amendment right, the use of an unlawful police tactic fails, without more, to show a policy or custom of intentionally discriminating against the homeless.

### III.  Due Process

The plaintiffs challenge the application of Section 8-321 to the plaintiffs as an unconstitutional deprivation of property without due process of law.  Sections 8-321, 20-82, and 20-30 are also challenged as unconstitutionally vague as applied to the plaintiffs.

### 1. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S.

CONST. AMEND. XIV.  At a minimum, the Due Process Clause "requiems] that

deprivation of life, liberty or property by adjudication be preceded by notice and

opportunity for hearing appropriate to the nature of the case."  Mullane v. Central

Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).  A claim under 42 U.S.C. § 1983

requires that the plaintiff show "(1) a deprivation of a constitutionally[]protected liberty or

property interest; (2) state action; and (3) constitutionally[]inadequate process."

Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  Generally, "some form of

hearing is required before an individual is finally deprived of a property interest."

Mathews v. Eldridge, 424 U.S. 319, 333 (1976).[9]  However, in a procedural due process

claim under Section 1983, "the existence of state remedies is relevant in a special

sense."  Zinermon v. Burch, 494 U.S. 113, 125-26 (1990).  A procedural due process

claim under Section 1983 requires an examination of "the procedural safeguards built

into the statutory or administrative procedure of effecting the deprivation[] and any

remedies for erroneous deprivations provided by statute or tort law."  494 U.S. at

125-26.

The plaintiffs challenge the application of Section 8-321 as a violation of

procedural due process.  Section 8-321 provides for both written notice to the owner of

an item that is unlawfully stored on public property and thirty-six hours within which the

---

[9] The balancing test in Mathews v. Eldridge, 424 U.S. 319 (1976), determines the sufficiency of a procedural safeguard in a due process claim alleging the denial of an opportunity to be heard.  The test examines:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. at 335.

owner must remove the item.  Alternatively, the City may remove an item immediately and without notice if the item is stored on public property and a posted sign warns owners that the City may immediately remove an unattended item.  The City retains confiscated property for thirty days (or seven days if the item is "a threat to the health, safety, or welfare of the public") so that an owner may retrieve the item upon adequate proof of ownership and payment of a reasonable storage fee.

The plaintiffs allege that a city official confiscated personal effects without notice.  Specifically, Shumate alleges that the City confiscated his property and failed to meet him at the storage facility to allow Shumate to retrieve the property.  The plaintiffs argue that the application of the ordinance prevents the plaintiffs' having any personal effects unless the plaintiffs keep their personal effects off public property at all times.[10]  Section 8-321 also provides no opportunity for an owner to contest the finding that an item was unlawfully stored on public property.  Because the plaintiffs lack both private property on which to store personal effects and access to a temporary storage facility,[11] the plaintiffs argue that the application of the ordinance to the plaintiffs deprives the plaintiffs of the right to possess property.

The allegations of the complaint fail to state a claim for the deprivation of procedural due process.  Section 8-321 provides an adequate procedural safeguard (1) by allowing thirty-six hours for removal of an item after written notice from the City,

---

[10] Under Section 8-321, "[m]oving the unlawfully stored items to another location on public property shall not be considered to be removing the items from public property."  (Doc. 1, Ex. D)

[11] Section 3-821 states that "the City may provide or may provide access to an agency which will provide temporary storage facilities for the stores of items of personal property for any person located in the City who does not have a permanent abode or other location to store personal property."

(2) by requiring a warning sign before the immediate confiscation of an item from a

certain area of public property, and (3) by allowing the owner thirty days in which to

retrieve confiscated property.  The procedure established in Section 8-321 considerably

reduces the risk of erroneous confiscation and furthers the government's interest in

protecting the public's health, safety, and welfare.  Requiring an additional safeguard

creates an unnecessary burden.  Furthermore, state tort law provides adequate due

process for the negligent loss of Shumate's property.  See Parratt v. Taylor, 451 U.S.

527, 541-44 (1981) (finding a pre-deprivation hearing unworkable because a state

cannot predict the negligent loss of property), overruled by Daniels v. Williams, 474 U.S.

327, 336 (1986), (finding that no Section 1983 liability arises out of a government

official's negligent act).

## 2. Vagueness

A statute or ordinance is unconstitutionally vague, as applied to a plaintiff, if the

statute fails to define the crime "with sufficient definiteness that ordinary people can

understand what conduct is prohibited" and "encourage[s] arbitrary and discriminatory

enforcement."  Kolender v. Lawson, 461 U.S. 352, 357 (1983); Joel, 232 F.3d at 1360.

"Vagueness arises when a statute is so unclear as to what conduct is applicable that

persons 'of common intelligence must necessarily guess at its meaning and differ as to

its application.'"  Wilson v. State Bar of Ga., 132 F.3d 1422, 1429 (11th Cir. 1998).  If

"the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a

standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'"  461 U.S. at 357 (quoting Smith v. Goguen, 415 U.S. 566, 575 (1974)).

An as-applied challenge alleging the unconstitutional vagueness of a city ordinance typically fails if the city provides some guideline to assist in the enforcement of the ordinance.  See Joel, 232 F.3d at 1360 (finding that an ordinance was sufficiently specific if read in conjunction with a city handbook interpreting the ordinance); Whiting, 942 F.2d at 22 (finding that an ordinance was sufficiently clear because of the narrow construction given to the term "sleep"); Roulette v. City of Seattle, 850 F. Supp. 1442, 1446 (W.D. Wash. 1994) (rejecting a vagueness challenge to an ordinance because the ordinance articulated the prohibited behavior—sitting or lying down on a sidewalk in a commercial district between 7 A.M. and 9 P.M.).

Section 8-321 prohibits storage, which is defined as "any action to place, store, park, display, locate, or set" an item of personal property on public property.  The plaintiffs argue that the ordinance's definition of "store" creates confusion and sweeps too broadly because the definition includes merely setting an item on a sidewalk or a park bench.  Section 8-321 is allegedly susceptible to arbitrary and discriminatory enforcement because no guideline for enforcement exists and conflicting guidance exists as to the type of conduct that violates the ordinance.  Section 20-82, which prohibits sleeping, lying, or reclining on a right of way during daytime hours, is allegedly unconstitutionally vague because of the failure to define "recline."  A city official allegedly threatened Lile with arrest if he reclined or failed to "sit up straight."

Accordingly, the plaintiffs argue that the ordinance encourages arbitrary and discriminatory police conduct because no guideline exists to aid enforcement.

The plaintiffs' argument fails because Section 20-82 sufficiently describes the prohibited conduct. The purpose of the ordinance is to facilitate both pedestrian and vehicular traffic on every city street, sidewalk, and walkway. Because a right of way is prone to congestion, the ordinance prohibits obstructing a right of way during daylight hours "except in places provided therefore or where reasonably necessary." Furthermore, the ordinance describes with specificity the "prohibited zone" to which the ordinance applies and defines "daylight hours" as "from sunrise to sunset." The ordinance directs that no person shall face a charge pursuant to the ordinance provided the person voluntarily and permanently ceases blocking the right of way. Thus, the ordinance provides an enforcement guideline that allows an individual to vacate the right of way before facing a charge for violating the ordinance. Although a definition of the term "recline" would add to the specificity of Section 20-82, the absence of a definition fails to render the ordinance unconstitutionally vague. Whether "recline" means "to lounge," "to lean," or "to assume a recumbent posture," the ordinance is sufficiently specific to alert any ordinary person that the prohibited conduct consists of obstructing a right of way during the day.

Furthermore, Section 8-321 sufficiently describes the prohibited conduct. Although the definition of "store" is neither exhaustive nor infinitely precise,[12] the ordinance as a whole is sufficiently specific to convey the nature of the prohibited conduct. A person of common intelligence suffers no difficulty comprehending that the ordinance prohibits the storage of personal property on public property and not the momentary or fleeting placement of a personal item on a sidewalk or a park bench. After an individual receives notice to remove an item from public property, the individual has thirty-six hours in which to remove the item. The notice and removal provision of Section 8-321 applies to abandoned property as well. Thus, only after notice and a failure to remove the item within thirty-six hours will the City confiscate an item of personal property.

Finally, Section 20-30 sufficiently describes the prohibited conduct. A trespass warning may be issued to "any individual who violates any city ordinance, rule or regulation, or state law or lawful directive of a city employee or official . . . ." (Doc. 1, Ex. G) Any individual who violates a warning is subject to arrest for trespassing. Notwithstanding the plaintiffs' arguments to the contrary, Section 20-30 is not unconstitutionally vague. See Daniel v. City of Tampa, 38 F.3d 546, 550-51 (11th Cir. 1994) (citing Adderley v. Florida, 385 U.S. 39, 42 (1966) (upholding Florida's malicious

---

[12] As stated in Unites States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 413 U.S. 548, 578-79 (1973):

> [T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.

trespass statute against a vagueness challenge)).  Accordingly, the plaintiffs fail to state

a claim for relief based on the alleged vagueness of Sections 8-321, 20-82, and 20-30.

IV.  First Amendment

The plaintiffs challenge Section 20-30[13] as unconstitutional both facially and as

applied to the plaintiffs.  Section 20-30, the plaintiffs argue, amounts to an unlawful prior

restraint that grants the City overly broad discretion.

"The extent to which the Government can control access [to a forum] depends on

the nature of the relevant forum."  Cornelius v. NAACP Legal Defense and Educ. Fund,

Inc., 473 U.S. 788, 800 (1985).  Because the purpose of a public forum is to facilitate

"the free exchange of ideas," government exclusion of an individual from a public forum

is permissible only if "the exclusion is necessary to serve a compelling state interest and

the exclusion is narrowly drawn to achieve that interest."  473 U.S. at 800; see also

Chad v. City of Ft. Lauderdale, 66 F. Supp. 2d 1242, 1246 (N.D. Fla. 1998) (noting that

a regulation must be "content neutral, . . . narrowly tailored to serve a significant

governmental interest, and . . . must . . . leave open ample alternatives for

communication.")  A public park is a traditional public forum.  Crowder v. Housing

Authority of City of Atlanta, 990 F.2d 586, 590 (11th Cir. 1993).

A form of preemptive censorship, a prior restraint faces a strong presumption of

unconstitutionality.  Freedman v. Maryland, 380 U.S. 51, 53-57 (1965); Public Citizen,

---

[13] Under Section 20-30(f), "[t]he city employee or official having control over a[n] . . . outdoor area, including municipal parks, may authorize an individual who has received a trespass warning to enter the property or premises to exercise his or her First Amendment rights.  Such authorization must be in writing, shall specify the duration of the authorization and any conditions thereof, and shall not be unreasonably denied."  (Doc. 1-2, Ex. G)

Inc. v. Pinellas County, 321 F. Supp. 2d 1275, 1290-91 (M.D. Fla. 2004). A prior restraint generally occurs in the context of a permit or licensing scheme. Every imposition of a prior restraint is unconstitutional if the scheme either (1) places unbridled discretion in a government official or agency or (2) fails to impose a time limitation on a government's issuing a license. Public Citizen, Inc., 321 F. Supp. 2d at 1291. Accordingly, "'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority.'" 321 F. Supp. 2d at 1291 (quoting Forsyth County v. Nationalist Movement, 505 U.S. 123, 131 (1992)).

Section 20-30 imposes no prior restraint. Section 20-30 prevents unlawful activity on public property following the issuance of a trespass warning and constitutes a reasonable regulation of speech on public property. If an individual receives a trespass warning, the individual may request authorization "to enter the property or premises to exercise his or her First Amendment rights or to conduct necessary municipal business." The authorization "must be in writing, shall specify the duration of the authorization and any conditions thereof, and shall not be unreasonably denied." (Doc. 1, Ex. G) Rather than seeking to preemptively restrict speech, the ordinance allows an individual who cannot otherwise lawfully enter public property to exercise a First Amendment right.

Consistent with an individual's interest in exercising a First Amendment right, the City possesses an important interest in preventing on public property the recurrence of unlawful activity by an individual who is subject to a trespass warning. See Chad, 66 F.

Supp. 2d at 1246 (upholding an anti-panhandling ordinance because the city had a "significant interest in eliminating nuisance activity along the beach, and in promoting a safe, healthful, and aesthetic environment in which recreational activity can be maximized.")  Elimination of Section 20-30 would marginalize the City's effort to prevent the recurrence of unlawful activity on public property.  See Chad, 66 F. Supp. 2d. at 1246 (citing Clark v. Community for Creative Non-Violence, 468 U.S. 288, 297 (1984) ("A rule is narrowly tailored as long as it promotes a significant government interest that would be less effectively accomplished without it.").

Accordingly, the plaintiffs fail to state a claim that Section 20-30 violates a First Amendment right.

V.  Equal Protection

*1. Class Discrimination*

The plaintiffs claim that the City denied the plaintiffs equal protection of the law by discriminating against the plaintiffs based on the plaintiffs' homeless status.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. AMEND. XIV.  If a law neither affects a fundamental right nor targets a suspect class, a challenge to the law under the Equal Protection Clause receives rational basis review.  Under the Fourteenth Amendment, "[h]omeless persons are not a suspect class, nor is sleeping out-of-doors a fundamental right."  Joel, 232 F.3d at 1357 (collecting cases).  Therefore, the plaintiffs' equal protection claim results in rational basis review, which is the most deferential scrutiny, of the challenged government conduct.  See Lindsley v. Natural

Carbonic Gas Co., 220 U.S. 61, 78-79 (1911); McGowan v. Maryland, 366 U.S. 420, 425-26 (1961).

First, rational basis review requires identification of a legitimate public purpose, meaning some goal that the government could have pursued. The second step determines whether a rational basis conceivably exists for believing that the legislation furthers that legitimate goal. "'As long as . . . the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational-basis scrutiny.'" 232 F.3d at 1358 (quoting Haves v. City of Miami, 52 F.3d 918, 921-22 (11th Cir. 1995)). Because the homeless are not a suspect class, the plaintiffs must show that the conduct of the City was unrelated to a permissible government objective. D'Aguanno v. Gallagher, 50 F.3d 877, 879 n.2 (11th Cir. 1995).

In Joel, the plaintiff claimed that a city ordinance prohibiting sleeping on public property violated the plaintiff's right to equal protection. Rational basis review resulted in a finding that the city "could have been seeking to promote aesthetics, sanitation, public health, and safety by enacting [the] ordinance." Nonetheless, the plaintiff argued that, even if the ordinance survived the rational basis test, the ordinance violated equal protection because the ordinance encouraged "'discriminatory, oppressive, and arbitrary enforcement.'"[14] The plaintiff failed to show, however, anything more than a disproportionate impact upon the homeless. See Washington v. Davis, 426 U.S. 229,

---

[14] To support the claim, the plaintiff introduced evidence that at least ninety-eight percent of people arrested for violating the ordinance were homeless. Joel, 232 F.3d at 1359.

239-40 (1976) (finding that "the invidious quality of a law claimed to be . . . dis-criminatory must ultimately be traced to a . . . discriminatory purpose.").

In this instance, the plaintiffs allege that the City's "unlawful policies, practices and/or customs" both intentionally discriminate against the homeless and fail to rationally relate to a legitimate government interest. The plaintiffs, however, allege no fact showing that either an ordinance or the enforcement of an ordinance is unrelated to a permissible government objective. Apart from conclusory allegations, the plaintiffs fail to allege any fact supporting a claim of purposeful, intentional discrimination against the homeless. Absent any additional fact showing an intent on the part of the City to discriminate against the homeless, the plaintiffs fail to state a claim for the denial of equal protection based on the plaintiffs' homeless status.

### 2. Right to Travel

An individual enjoys a fundamental right to engage in interstate travel. United States v. Guest, 383 U.S. 745, 757 (1966). However, the United States Constitution recognizes no fundamental right to engage in intrastate travel. See Wright v. City of Jackson, 506 F.2d 900, 902-03 (5th Cir. 1975); Johnson v. City of Cincinnati, 310 F.3d 484, 495-96 (6th Cir. 2002).

The plaintiffs in this instance allege that the City's policies burden the plaintiffs' right to travel locally within the City and the state. Because no fundamental right to intrastate travel exists, the City's conduct is subject to rational basis review. The plaintiffs fail to state a claim because the plaintiffs fail to show that the City's

conduct—enforcing a city ordinance—is not rationally related to a legitimate government purpose, such as promoting the health, safety, and welfare of the general public.

## VI.  Right to Travel under Florida Law

The Florida Constitution provides a fundamental right to travel intrastate.  State v. J.P, 907 So. 2d 1101, 1113 (Fla. 2004); Wyche v. State, 619 So. 2d 231, 235 (Fla. 1993).  A laws that burdens a citizen's freedom of movement receives strict scrutiny review.  J.P., 907 So. 2d at 1109 (explaining strict scrutiny as requiring the state "to demonstrate that the challenged regulation serves a compelling state interest and accomplishes its goal through the least intrusive means.").

In this instance, the plaintiffs fail to state a claim under the Florida Constitution because the plaintiffs fail to show that an ordinance burdens the fundamental right to intrastate travel.  The challenged ordinances prohibit (1) storing personal property on public property, (2) trespassing on public property after receiving a trespass warning, and (3) sleeping, lying, or reclining on a right of way.  Additionally, the complaint alleges a constitutional violation based on an ordinance that prohibits urinating and defecating in public and a statute that prohibits engaging in disorderly conduct and breaching the peace.  No statute or ordinance in this instance burdens the plaintiffs' right to travel within the city or state.  Compare J.P., 907 So. 2d at 1112-13 (finding that a Tampa and Pinellas Park juvenile curfew burdened a juvenile's freedom of movement).

## VII.  Fourth and Eighth Amendment

Because a decision on the plaintiffs' Fourth and Eighth Amendment claims would benefit from both a more developed record and more focused briefs, a discussion of

each claim is reserved for summary judgment.  Therefore, the defendant's motion is denied as to each of the plaintiffs' Fourth and Eighth Amendment claims.

Conclusion

The City's motion (Doc. 11) is **GRANTED IN PART**.  Counts one, two, three, four, five, six, seven, eight, eleven, twelve, and thirteen of the complaint (Doc. 1) are **DISMISSED**.  The City's motion is **DENIED** as to counts nine and ten.  The plaintiffs are granted leave to file an amended complaint no later than **December 15, 2009**.

ORDERED in Tampa, Florida, on November 17, 2009.

STEVEN D. MERRYDAY<br>
UNITED STATES DISTRICT JUDGE