UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY CATRON et al.,

    Plaintiffs,

v.                                                                    CASE NO.: 8:09-cv-923-T-23EAJ

CITY OF ST. PETERSBURG,

    Defendant.

_____/

## ORDER

    The plaintiffs sue for declaratory and injunctive relief pursuant to 42 U.S.C.

§ 1983 ("Section 1983") for a violation of the plaintiffs' rights under the First, Fourth,

Eighth, and Fourteenth Amendments to the United States Constitution and Article I,

Section IX, of the Florida Constitution.  On June 15, 2009, the City moved (Doc. 11) to

dismiss the complaint.  A November 17, 2009, order (Doc. 27) grants in part the City's

motion to dismiss.

    The order (Doc. 27) finds (1) that the plaintiffs lacked standing to challenge each

city ordinance as facially and unconstitutionally vague, (2) that the plaintiffs failed to

state a claim either that any ordinance establishes an unconstitutional municipal policy

or that the City has an "anti-homeless policy," (3) that the plaintiffs failed to state a claim

for the deprivation of procedural due process, (4) that the plaintiffs failed to state a claim

that any ordinance is unconstitutionally vague as applied to the plaintiffs, (5) that no

ordinance imposes an unconstitutional prior restraint, and (6) that no ordinance burdens

the plaintiffs' right to travel.  The plaintiffs file an amended complaint (Doc. 40) and the

City moves (Doc. 42) to dismiss each count (except counts nine and ten)[1] for failure to state a claim.

### Allegations of the Amended Complaint

The plaintiffs Anthony Catron ("Catron"), Raymond Young ("Young"), Jo Anne Reynolds ("Reynolds"), William Shumate ("Shumate"), and Michael Lile ("Lile") are homeless individuals living on the streets and sidewalks of St. Petersburg.[2]

In 2006 and in 2007, pursuant to Section 20-30 of the St. Petersburg City Code ("Section 20-30"), the police issued to Catron a trespass warning, which prohibited Catron from entering Williams park or any other city park.[3] Catron neither received a citation nor faced an arrest at the time that Catron received the trespass warning. The police told Catron that the trespass warning for Williams Park applied "curb to curb" and prohibited Catron from (1) walking on the sidewalk outside the park, (2) using a public restroom in the park, and (3) sitting in a bus shelter outside the park. The police arrested Catron approximately ten times for violating a trespass warning.[4] In addition, the police intermittently detain Catron and demand identification "without reasonable suspicion of criminal activity." If Catron fails to produce identification, the police search

---

[1] Count nine alleges a violation of the Fourth Amendment, and count ten alleges a violation of the Eighth Amendment. The City answered (Doc. 41) counts nine and ten on December 22, 2009.

[2] (Doc. 40, ¶ 6-10, 23-25, 32)

[3] The August 23, 2006, trespass warning applies to "all of Williams Park" and "all city parks" and remains in effect "permanently." (Doc. 40, ¶ 184; Doc. 40-1, Ex. H) The August 29, 2007, trespass warning applied to unspecified public property and remained effective for one year. (Doc. 40, ¶ 187; 40-1, Ex. I) Catron was outside the park when Catron received the August, 2007, trespass warning.

[4] (Doc. 40, ¶¶ 184-196, 216-226, Ex. J)

Catron and threaten Catron with arrest.  If Catron sleeps on a sidewalk or other city property, police awaken Catron, demand that he relocate, and threaten him with arrest.[5]

Young received a warning pursuant to Section 8-321 of the St. Petersburg City Code ("Section 8-321") because Young had "too much stuff."  Young's possessions consisted of two suitcases, bags, clothes, hygiene products, a bag of groceries, and "other personal belongings."  The police told Young that the law allowed a maximum of two bags, one backpack, and one blanket.  Because Young failed to timely remove his property, the police both arrested Young and seized his property,[6] although he reclaimed his property in due course.  Following his arrest, Young received additional warnings and "discarded personal belongings to comply with th[e] [warnings]."[7]  On July 28, 2008, Young received a trespass warning for Williams Park, which warning fails to re-state the violation underlying the warning.  On the same day, the police arrested Young for possessing alcohol in a city park, but the City never formalized the charge.[8]

On February 10, 2009, Reynolds received an order[9] pursuant to Section 8-321 to remove from public property within thirty-six hours her "unlawfully stored" personal belongings.  When she received the notice, Reynolds was asleep "on a public sideway."  Because she possessed neither a shelter nor a space in which to store property,

---

[5] The police also periodically stop Lile and Shumate "without reasonable suspicion of criminal activity" and demand identification.  (Doc. 40, ¶¶ 300-313)

[6] The arresting officer noted also that Young possessed an "open container" at the time of the arrest.  (Doc. 40-1, Ex. E)

[7] (Doc. 40, ¶¶ 67-70, 106-111, 137-143)

[8] (Doc. 40, ¶ 197-201, 227-232)

[9] (Doc. 40-1, Ex. D)

Reynolds stored her and another individual's property in or close to Reynolds's wheelchair. The police informed Reynolds "that having more than two bags qualifies as storage on public property."[10]

The police confiscated Shumate's property on three occasions. On one occasion, after Shumate "left the park temporarily," the police confiscated Shumate's property. The police informed Shumate that "people are not allowed to watch other individual's belongings." Nonetheless, Shumate located the city storage facility and retrieved his property after two of the three confiscations. On November 1, 2007, the police arrested Shumate for public urination. Shumate pleaded guilty, served one day in jail, and paid a fine.[11]

On April 25, 2008, the police arrested Lile for public urination. No public restroom was available at the time that the police arrested Lile. Lile served five days in jail and paid both a fine and costs.[12]

Additionally, during "'area-wide' sweeps near St. Vincent de Paul, a homeless service provider located in St. Petersburg," the City posts signs warning that personal property within twenty-five feet of the sign is subject to seizure if remaining on public property thirty-six hours after the sign's posting. In conducting a "sweep," the police (1) instruct each individual to "keep what [each] can carry," (2) instruct each individual that only a certain number of "bags and blankets" is permissible, and (3) confiscate

---

[10] (Doc. 40, ¶¶ 63, 96-102, 123-132)

[11] (Doc. 40, ¶¶ 65, 103-105, 133-134, 292-294)

[12] (Doc. 40, ¶¶ 287-290)

"personal belongings including bedding, blankets, clothes[,] and other personal items . . . ."[13]

The plaintiffs allege that the City maintains a "policy, custom[,] and/or practice of arresting, harassing and otherwise interfering with homeless people for engaging in the ordinary and essential activities of daily life."[14]  The police continually warn, cite, and arrest the plaintiffs for sleeping, sitting, eating, carrying personal items, alleviating "personal needs,"[15] and associating with friends and family.  In counts one, two, three, four, five, six, seven, eight, and eleven of the amended complaint, the plaintiffs allege (1) that under the Due Process Clause of the Fourteenth Amendment, Section 8-321 is "void for vagueness," facially unconstitutional, and unconstitutional as applied; (2) that under the Due Process Clause of the Fourteenth Amendment, Section 20-30 is "void for vagueness," facially unconstitutional, and unconstitutional as applied; (3) that under the First Amendment, Section 20-30 is facially unconstitutional and unconstitutional as applied; and (4) that the City's "policies, practices[,] and/or customs . . . burden [the] [p]laintiffs'" right under Article I, Section IX, of the Florida Constitution to travel intrastate.

---

[13] (Doc. 40, ¶¶ 144-147)

[14] (Doc. 40, ¶¶ 41)

[15] A personal need includes using the public restroom or urinating and defecating in public when no restroom is available.

Discussion

*1. "Void for Vagueness"*

A November 17, 2009, order (Doc. 27) finds that the plaintiffs lack standing to assert a facial challenge on vagueness grounds to each ordinance, because a plaintiff who engages in clearly proscribed conduct "'cannot complain of the vagueness of the law as[]applied to the conduct of others,'" Joel v. City of Orlando, 232 F.3d 1353, 1359-60 (11th Cir. 2000) (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 (1982)) (finding that a homeless person whose conduct fell within the scope of a municipal ordinance that prohibited camping could not maintain a facial challenge to the ordinance)); Parker v. Levy, 417 U.S. 733, 756 (1974) (finding that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). Accordingly, the plaintiffs' vagueness challenge failed because each plaintiff engaged in some conduct unambiguously proscribed by each ordinance.

In counts one and four of the amended complaint, the plaintiffs assert that Sections 8-321 and 20-30 are "void for vagueness." In arguing against dismissal of counts one and four, the plaintiffs assert that, in dismissing the plaintiffs' original vagueness challenge, this court applied the incorrect rule. Specifically, the plaintiffs assert that City of Chicago v. Morales, 527 U.S. 41 (1999), rather than United States v. Salerno, 481 U.S. 739, 745 (1987), provides the appropriate rule for a facial challenge on vagueness grounds. Additionally, the plaintiffs cite Horton v. City of St. Augustine, 272 F.3d 1318 (11th Cir. 2001), and state that Horton "declin[es] to follow Salerno and

appli[es] Morales to permit [a] facial challenge on vagueness grounds."[16]  Contrary to

the plaintiffs' assertion (which completely misstates the ruling in Horton), although

Horton discusses Morales, Horton expressly follows Salerno and in "[a]pplying Salerno's

general rule . . . conclude[s] that Horton has not established that [the law] is

unconstitutionally vague on its face."[17]  272 F.3d at 1329-30.  Accordingly, dismissal of

the plaintiffs' original vagueness challenge derived appropriately from the finding that

each plaintiff engaged in some conduct clearly proscribed by each ordinance.  See Joel,

232 F.3d at 1359-60.

In the amended complaint, the plaintiffs merely drop two of the named plaintiffs

and add Young, a new plaintiff.  The allegations show only that Young engaged in

behavior clearly proscribed by each ordinance.[18]  The plaintiffs provide no additional

allegation that merits a departure from the November 17, 2009, order (Doc. 27).

---

[16] (Doc. 49, p. 7, n.2)

[17] In Morales, a facial challenge to a criminal law (which contained no mens rea and infringed on a constitutionally protected right) succeeded because the law was impermissibly vague.  The law in Morales was a "Gang Congregation Ordinance" that prohibited "'criminal street gang members'" from "'loitering' with one another or with other persons in any public place."  527 U.S. at 45-46.  The law defined loitering as "remain[ing] in any one place with no apparent purpose."  Accordingly, if an individual's "purpose" was not "apparent" to a police officer, that individual was "loitering."  The law failed to identify any conduct that distinguished innocent loitering from criminal loitering.  Thus, the police possessed absolute discretion under the law to determine whether an individual was loitering.

In contrast, Horton finds that "[t]he general rule is that for a facial challenge to a legislative enactment to succeed, 'the challenger must establish that no set of circumstances exists under which the act would be valid.'"  272 F.3d at 1329 (quoting Salerno).  In applying "Salerno's general rule," Horton finds that an ordinance is not facially unconstitutional.  The ordinance both "identifies with specificity no less than eight types of [acts] that come within its prohibition" and "is not facially invalid under Salerno because circumstances exist under which it clearly would not be unconstitutionally vague . . . ." (emphasis in original).  Acknowledging the debate over the Salerno rule, Horton distinguishes the ordinance in Morales from the ordinance in Horton.  Unlike the ordinance in Horton, the ordinance in Morales was so indecipherably vague that "no standard of conduct [wa]s specified at all.'"

[18] (Doc. 40-1, ¶¶ 67-70, 106-111, 137-143, 197-201, 227-232, Ex. E)

*2. Procedural Due Process*

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV.  At a minimum, the Due Process Clause "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).  A claim under 42 U.S.C. § 1983 requires that the plaintiff show "(1) a deprivation of a constitutionally[]protected liberty or property interest; (2) state action; and (3) constitutionally[]inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  Generally, constitutionally adequate process involves "some form of hearing . . . before an individual is finally deprived of a property interest."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  However, "'due process is flexible and calls for such procedural protections as the particular situation demands.'" 424 U.S. at 334 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Determining the adequacy of procedural protections requires an examination of:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

424 U.S. at 335.

*a. Section 8-321*

In this instance, the plaintiffs allege that Section 8-321 is unconstitutional because Section 8-321 fails to provide "an adequate pre- or post-deprivation hearing process to

challenge the determination that . . . property is unlawfully 'stored' on 'public property' in violation of the ordinance."

Section 8-321 prohibits outdoor storage of certain property (including garbage, furniture, motor vehicles, and personal property) on both public and private property. (Doc. 40-1, Ex. B)  Section 8-321 defines (1) "store" or "stored" as "any action to place, store, park, display, locate, or set upon;" (2) "public property" as "includ[ing] public rights-of-way," and (3) "personal property" as "any item . . . including clothing or bedding."  After receiving written notice that an item is "unlawfully stored on public property," an individual has thirty-six hours in which to remove the unlawfully stored item.[19]  Under the ordinance, written notice must contain (1) "a complete description of the items to be removed," (2) "the location of the property," (3) "the section of the Code in violation," (4) "the location to which the items will be removed," (5) "the date and time by which the items must be removed," and (6) "the date by which the item(s) must be claimed from the location where they are being stored."  The City may remove an item from public property, pursuant to 8-321, without written notice if a sign is posted "stating that unattended items may be removed immediately."  Once the City removes an item from public property, the City may dispose of the item after either thirty days or seven days, "if the item[] [is] . . . a threat to the health, safety, or welfare of the public."

In opposing dismissal, the plaintiffs argue that under Grayden and Mathews Section 8-321 provides "constitutionally inadequate process."  Specifically, the plaintiffs

---

[19] If the City provides written notice of an item unlawfully stored on private property, the "owner or occupant" of the private property may request a hearing before the item's removal.

argue that the plaintiffs' "private interest" consists of the plaintiffs' "keep[ing] their

belongings with them in those public areas where the[] [plaintiffs] sleep, sit, eat, take

care of personal needs, and associate with friends and family." (Doc. 49)  The risk of

unjust deprivation is purportedly high because the ordinance lacks a procedure by

which an individual may challenge the City's determination that personal property is

unlawfully "stored" on public property.  Additionally, the plaintiffs argue that, because the

ordinance "already provides hearings prior to the removal of items unlawfully 'stored' on

private property[,] . . . a procedure could be easily applied to public property."

       Notwithstanding the plaintiffs' conclusory allegations as to Section 8-321, the

plaintiffs fail to state a claim that Section 8-321 deprives the plaintiffs of their right to

procedural due process.  An individual possesses no constitutionally protected right to

store personal belongings on public land.  See Church v. City of Huntsville, 30 F.3d

1332, 1345 (11th Cir. 1994).  Furthermore, Section 8-321 provides more than adequate

procedural protection.  Section 8-321 regulates the private interest in placing personal

belongings on public property.  The risk is exceedingly low that an individual will be

unjustly deprived of personal belongings, because Section 8-321 includes (1) detailed,

written notice that an item is unlawfully stored, (2) thirty-six hours in which to remove an

item before confiscation, and (3) thirty days in which to reclaim an item after

confiscation.  Thus, the owner enjoys both thirty-six hours' written notice before the City

temporarily deprives the owner of an item and thirty days' notice before the City

permanently deprives the owner of an item.  If the lack of a pre-deprivation hearing

rendered Section 8-321 unconstitutional, no city could promptly remove personal

- 10 -

property (such as a vehicle) from public property (such as the sidewalk in front of a

public hospital) and ensure the safety of other persons or property, public or private.

The City's interest in protecting the health, safety, and welfare greatly outweighs the

private interest at stake.  Any requirement that the City provide either a pre- or post-

deprivation hearing to challenge whether an item is unlawfully "stored" on public

property is both superfluous and unduly burdensome.

*b. Section 20-30*

The plaintiffs allege that Section 20-30 is unconstitutional because the ordinance

deprives the plaintiffs of their "constitutionally protected interests without any opportunity

to either a pre- or post-deprivation hearing to contest the facts underlying the issuance

of a trespass warning."

Section 20-30 (Doc. 40-1, Ex. F) permits a police officer, a city employee, a city

official, or a city official's designee to "issue a trespass warning to any individual who

violates any city ordinance, rule or regulation, or state law or lawful directive . . . which

violation was committed while on or within a City-owned facility, building, or outdoor

area, including municipal parks . . . ."  The trespass warning states that the recipient is

"hereby notified that [the recipient's] presence is no longer welcome . . . on the

property/premises described . . . unless such prohibition is rescinded in writing by the

City official having control over the premises."  An individual's first warning may not

exceed one year, and the second warning may not exceed two years.  On the reverse

side of the trespass warning is a copy of Florida's criminal trespass statute.  Under the

statute, "notice against entering or remaining" is an element of the "offense of trespass

The plaintiffs challenge Section 20-30[20] as unconstitutional and allege that

Section 20-30 (1) "fails to contain narrow, objective and definite standards," (2) "fails to

establish substantive constraints . . . to ensure against arbitrary and discriminatory

limitations on protected First Amendment activity," (3) "fails to allow for spontaneous

speech activity in traditional public fora," and (4) amounts to "an overbroad restriction

that sweeps into its ambit a substantial amount of constitutionally protected speech."

The November 17, 2009, order (Doc. 27) finds that Section 20-30 neither is

overbroad nor imposes a prior restraint on First Amendment activity.  Section 20-30

prevents unlawful activity on public property following the issuance of a trespass

warning and constitutes a reasonable regulation of speech on public property.  If an

individual receives a trespass warning, the individual may request authorization "to

enter the property or premises to exercise his or her First Amendment rights or to

conduct necessary municipal business."  The authorization "must be in writing, shall

specify the duration of the authorization and any conditions thereof, and shall not be

unreasonably denied."  (Doc. 40, Ex. F)  Rather than seeking to preemptively restrict

speech, the ordinance allows an individual who cannot otherwise lawfully enter public

property to exercise a First Amendment right.

Additionally, the order (Doc. 27) finds that, consistent with an individual's interest

in exercising a First Amendment right, the City possesses an important interest in

---

[20] Under Section 20-30(f), "[t]he city employee or official having control over a[n] . . . outdoor area, including municipal parks, may authorize an individual who has received a trespass warning to enter the property or premises to exercise his or her First Amendment rights.  Such authorization must be in writing, shall specify the duration of the authorization and any conditions thereof, and shall not be unreasonably denied."  (Doc. 40-1, Ex. F)

preventing on public property the recurrence of unlawful activity by an individual who is

subject to a trespass warning.  See Chad, 66 F. Supp. 2d at 1246 (upholding an anti-

panhandling ordinance because the city had a "significant interest in eliminating

nuisance activity along the beach, and in promoting a safe, healthful, and aesthetic

environment in which recreational activity can be maximized.")  Elimination of Section

20-30 would marginalize the City's effort to prevent the recurrence of unlawful activity

on public property.  See Chad, 66 F. Supp. 2d. at 1246 (citing Clark v. Community for

Creative Non-Violence, 468 U.S. 288, 297 (1984) ("A rule is narrowly tailored as long as

it promotes a significant government interest that would be less effectively

accomplished without it.").

In the amended complaint (Doc. 40), the plaintiffs provide no additional factual

allegation that warrants a finding different from the November 17, 2009, order.

Accordingly, the amended complaint fails to state a claim that Section 20-30 violates a

First Amendment right.

*5. Right to Travel under Florida Law*

The November 17, 2009, order (Doc. 27) finds that the plaintiffs fail to state a

claim under the Florida Constitution because the plaintiffs fail to show that an ordinance

burdens the fundamental right to intrastate travel.  In the amended complaint (Doc. 40)

the plaintiffs allege (1) that "[e]nforcement of Section 8-321 leaves [the plaintiffs] with no

place to go within the City . . . if they cannot properly carry or store their personal

belongings and (2) that, because no restroom is available to the plaintiffs, the plaintiffs

have "no place to go within the City when they must engage in . . . life-sustaining

conduct."[21]   Nonetheless, the plaintiffs fail to state a claim that any statute or ordinance in this instance violates the plaintiffs' right to travel intrastate, because no statute or ordinance burdens the right to travel intrastate.

<u>Conclusion</u>

The City's motion (Doc. 42) is **GRANTED**.   Counts one, two, three, four, five, six, seven, eight, and eleven of the amended complaint (Doc. 40) are **DISMISSED WITH PREJUDICE**.

ORDERED in Tampa, Florida, on March 10, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[21] (Doc. 40, ¶¶ 326-332)